UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOCi, Inc., <br><br>             Plaintiff, <br><br>    v. <br><br> Yext, Inc., Stuart Greer, Chris Brownlee, Jenette Simisky, Megan Menesale, and Keith Hadelman, <br><br>            Defendants. | Case No. 1:24-cv-04530-RA-OTW |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS SOCI, INC.'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

RELEVANT ALLEGATIONS ................................................................................. 2

ARGUMENT ......................................................................................................... 8

POINT I - THE FORMER SOCI EMPLOYEES ARE NOT  SUBJECT TO PERSONAL JURISDICTION .......................................................... 8

    I.    NO STATUTORY BASIS FOR PERSONAL JURISDICTION EXISTS OVER THE FORMER SOCI EMPLOYEES. ......................................... 8

        A.    The FAC neither asserts nor establishes general jurisdiction. ................... 8

        B.    The FAC does not establish personal jurisdiction over the Former SOCi Employees. ....................................................................... 9

            1.    SOCi does not allege that the Former SOCi Employees committed any tortious acts within New York state. ...................... 9

            2.    SOCi fails to plead conspiracy jurisdiction. ............................... 10

    II.    THE EXERCISE OF PERSONAL JURISDICTION WOULD VIOLATE DUE PROCESS. ....................................................................... 11

POINT II - VENUE IS IMPROPER FOR THE CLAIMS AGAINST THE FORMER SOCI EMPLOYEES .......................................................................... 13

POINT III - THE AMENDED COMPLAINT FAILS TO STATE ANY PLAUSIBLE CLAIM ................................................................................................. 14

    I.    PLAINTIFF'S BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED. ......................................................................................... 14

        A.    SOCi's breach of contract claims fail because SOCi does not demonstrate plausible grounds for harm that this Court can address .................................................................................................. 14

        B.    SOCi fails to state a contract claim against any Former SOCi Employee. .............................................................................. 16

            1.    SOCi has not plausibly alleged a valid contract with, or breach of that contract by, Simisky or Menesale. ........................ 16

        C.    SOCi has failed to allege a contract claim against Christopher Brownlee, including because Brownlee had no contract with SOCi. ...... 18

        D.    SOCi fails to plausibly allege a valid, enforceable contract with Greer or Hadelman. ............................................................. 19

    II.    PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED. ......................................................................................... 21

        A.    SOCi's tortious interference claim fails because SOCi has not adequately pleaded breach of a valid contract. ..................................... 21

# TABLE OF CONTENTS
(continued)

Page

B.    SOCi fails to allege "actual knowledge" of the relevant contracts. ......... 21

C.    SOCi has alleged only future harm. ........................................................ 23

III.    PLAINTIFF'S TRADE SECRET CLAIMS SHOULD BE DISMISSED. ........ 23

A.    SOCi fails to plead the existence of a protectable trade secret. ............. 23

1.    Plaintiff has not identified trade secrets with sufficient specificity. ........................................................................... 24

2.    Plaintiff has not taken reasonable measures to protect its alleged trade secret information. ........................................... 25

B.    Plaintiff fails to plead misappropriation or use. ...................................... 26

1.    Inevitable disclosure allegations are not sufficient to state a misappropriation claim. ................................................. 26

2.    Conclusory and speculative allegations are not sufficient to allege misappropriation or use. ................................... 27

IV.    PLAINTIFF'S CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED. ............................................................................................ 30

A.    The intracorporate conspiracy doctrine bars SOCi's civil conspiracy claim. ................................................................................. 30

B.    Plaintiff fails to plead an underlying tort of misappropriation as required to sustain a claim of civil conspiracy under New York law. ....................................................................................................... 31

C.    Plaintiff fails to allege the existence of an underlying agreement among defendants. ................................................................................ 32

D.    Plaintiff's civil conspiracy claim is duplicative of its tort claims. ........... 32

V.    PLAINTIFF ALSO FAILS TO STATE CLAIMS FOR UNFAIR COMPETITION AND UNJUST ENRICHMENT. ........................................... 33

A.    The FAC fails to state a claim for unfair competition because it merely duplicates the trade secret allegation. .......................................... 33

B.    SOCi's "catchall" unjust enrichment claim also fails, including because it duplicates its misappropriation and tortious interference allegations. ............................................................................................. 34

CONCLUSION ........................................................................................................ 36

# TABLE OF AUTHORITIES

**Cases**

*A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*,
2018 WL 1273343 (S.D.N.Y. Mar. 5, 2018) ....................................................21, 22

*Ad Lightning Inc. v. Clean.io, Inc.*,
2020 WL 4570047 (S.D.N.Y. Aug. 7, 2020) ....................................................28, 30

*Aira Jewels, LLC v. Mondrian Collection, LLC*,
2024 WL 1255798 (S.D.N.Y. Mar. 25, 2024) ..................................................24, 30

*Angulo v. Manny*,
2012 WL 569190 (S.D.N.Y. Feb. 14, 2012) ...........................................................30

*Arnold K. Davis & Co. v. Ludemann*,
160 A.D.2d 614 (1st Dep't 1990) ...........................................................................16

*AT&T Corp. v. Atos IT Sols. & Servs., Inc.*,
2024 WL 379952 (S.D.N.Y. Feb. 1, 2024).........................................................32, 33

*Atl. Int'l Movers, LLC v. Ocean World Lines, Inc.*,
914 F. Supp. 2d 267 (E.D.N.Y. 2012) ...................................................................31

*BAT LLC v. TD Bank, N.A.*,
2018 WL 4922736 (E.D.N.Y. July 31, 2018) .........................................................35

*Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machs. Corp.*,
2022 WL 889145 (S.D.N.Y. Mar. 25, 2022) ..........................................................24

*Berman v. Sugo LLC*,
580 F. Supp. 2d 191 (S.D.N.Y. 2008) ...............................................................18, 19

*Biz2Credit, Inc. v. Kular*,
2015 WL 2445076 (S.D.N.Y. May 21, 2015) .........................................................11

*Bohnak v. Marsh & McLennan Cos., Inc.*,
580 F. Supp. 3d 21 (S.D.N.Y. 2022).................................................................15, 16

*Boneta v. Rolex Watch USA, Inc.*,
232 F. Supp 3d 354 (S.D.N.Y. 2017).................................................................10, 30

*Conte v. Emmons*,
895 F.3d 168 (2d Cir. 2018)...................................................................................22

*Core SWX, LLC v. Vitec Grp. US Holdings, Inc.*,
2022 WL 3588081 (E.D.N.Y. July 14, 2022)..........................................................25

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Corsello v. Verizon N.Y., Inc.*,
   967 N.E.2d 1177 (N.Y. 2012)................................................................................................34

*Cynosure LLC v. Reveal Lasers LLC*,
   2022 WL 18033055 (D. Mass. Nov. 9, 2022) ......................................................................14

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)...........................................................................................................8, 9

*DirecTV Latin Am., LLC v. Park 610, LLC*,
   691 F. Supp. 2d 405 (S.D.N.Y. 2010)...............................................................................9, 10

*EarthWeb, Inc. v. Schlack*,
   71 F. Supp. 2d 299 (S.D.N.Y. 1999), *aff'd*, 2000 WL 1093320 (2d Cir. 2000).....................25

*Elsevier Inc. v. Doctor Evidence, LLC*,
   2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) .............................................................24, 25, 29

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009)................................................................................................15

*Fierro v. Gallucci*,
   2008 WL 2039545 (E.D.N.Y. May 12, 2008) ......................................................................32

*Fisher v. Int'l Student Exch., Inc.*,
   38 F. Supp. 3d 276 (E.D.N.Y. 2014) ...................................................................................13

*Fometal S.R.L. v. Keili Trading LLC*,
   2024 WL 307976 (S.D.N.Y. Jan. 26, 2024) ........................................................................32

*FP UC Holdings, LLC v. Hamilton*,
   2020 WL 1492783 (Del. Ch. Mar. 27, 2020)........................................................................20

*Garvey v. Face of Beauty LLC*,
   634 F. Supp. 3d 84 (S.D.N.Y. 2022)............................................................................ *passim*

*Gulf Ins. Co. v. Glasbrenner*,
   417 F.3d 353 (2d Cir. 2005)................................................................................................13

*GWG MCA Capital, Inc. v Nulook Capital, LLC*,
   2020 WL 10508196 (E.D.N.Y. June 28, 2020) ....................................................................22

*Hessel v. Christie's Inc.*,
   399 F. Supp. 2d 506 (S.D.N.Y. 2005)..................................................................................15

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Hill v. HSBC Bank plc*,
    207 F. Supp. 3d 333 (S.D.N.Y. 2016)...........................................................................9

*Hua Xue v. Jensen*,
    2020 WL 6825676 (S.D.N.Y. Nov. 19, 2020)...................................................31, 33

*Hub Grp., Inc. v. Knoll*,
    2024 WL 3453863 (Del. Ch. July 18, 2024).............................................................20

*Iacovacci v. Brevet Holdings, LLC*,
    437 F.Supp.3d 367 (S.D.N.Y. 2020)..........................................................................23

*Insulet Corp. v. EOFlow, Co.*,
    104 F. 4th 873 (Fed. Cir. 2024) ................................................................................26

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*,
    131 F. Supp. 2d 544 (S.D.N.Y. 2001).........................................................................8

*Janus et Cie v. Kahnke*,
    2013 WL 5405543 (S.D.N.Y. Aug. 29, 2013)............................................................27

*Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*,
    2013 WL 417406 (S.D.N.Y. Feb. 4, 2013).................................................................34

*KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*,
    2021 WL 2982866 (D. Mass. July 15, 2021).............................................................17

*Lawrence v. NYC Med. Prac., P.C.*,
    2019 WL 4194576 (S.D.N.Y. Sept. 3, 2019).............................................................26

*Lebron v. Encarnacion*,
    253 F. Supp. 3d 513 (E.D.N.Y. 2017) .........................................................................9

*Liberty Power Corp., LLC v. Katz*,
    2011 WL 256216 (E.D.N.Y. Jan. 26, 2011) ..............................................................16

*Lightfoot v. Cendant Mortg. Corp.*,
    580 U.S. 82 (2017)....................................................................................................12

*M&C Saatchi PR LLP v. Beer Frost, Inc.*,
    2019 WL 2717199 (S.D.N.Y. June 28, 2019) ...........................................................19

*MedQuest Ltd. v. Rosa*,
    2023 WL 2575051 (S.D.N.Y. Mar. 20, 2023) ...........................................................29

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Mende v. Milestone Tech., Inc.*,
269 F. Supp. 2d 246 (S.D.N.Y. 2003)................................................................................8

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)................................................................................11, 12

*Meyer v. Bd. Of Regents of Univ. of Okla.*,
2015 WL 13653970 (S.D.N.Y. Apr. 7, 2015)................................................................12

*MJMAdvertising v. Panasonic Indust. Co.*,
294 A.D.2d 265 (1st Dep't 2002) ................................................................21, 22

*Mulgrew v. U.S. Dep't of Transp.*,
2024 WL 665948 (E.D.N.Y. Feb. 17, 2024)................................................................14

*My Mavens, LLC v. Grubhub, Inc.*,
2023 WL 5237519 (S.D.N.Y. Aug. 14, 2023)................................................................29

*Negrete v. Citibank, N.A.*,
187 F Supp 3d 454 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019)........................28

*Perrone v. Catamount Ski Resort, LLC*,
2020 WL 2538464 (S.D.N.Y. May 19, 2020) ................................................................13

*In re Platinum-Beechwood Litig.*,
427 F. Supp. 3d 395 (S.D.N.Y. 2019)................................................................32

*Pope v. Rice*,
2005 WL 613085 (S.D.N.Y. Mar. 14, 2005) ................................................................31, 32

*R.R. Donnelley & Sons Co. v. Marino*,
505 F. Supp. 3d 194 (W.D.N.Y. 2020)................................................................30

*RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*,
692 F. Supp. 3d 135 (S.D.N.Y. 2023)................................................................35

*Regnante v. Sec. & Exch. Offs.*,
134 F. Supp. 3d 749 (S.D.N.Y. 2015)................................................................35

*Related Companies, L.P. v. Ruthling*,
2017 WL 6507759 (S.D.N.Y. Dec. 18, 2017) ................................................................10, 11

*Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*,
893 F. Supp. 285 (S.D.N.Y. 1995)................................................................15, 16

# TABLE OF AUTHORITIES
(continued)

**Page**

*Schultz v. Safra Nat'l Bank of N.Y.*,
   377 F. App'x 101 (2d Cir. 2010) ............................................................8

*Stein v. Annenberg Rsch. Inst.*,
   1991 WL 143400 (S.D.N.Y. July 19, 1991) ..........................................10

*Sunder Energy, LLC v. Jackson*,
   305 A.3d 723 (Del. Ch. 2023) ...............................................................20

*Thackurdeen v. Duke Univ.*,
   660 F.App'x 43 (2d Cir. 2016) ..............................................................10

*TRB Acquisitions LLC v. Yedid*,
   2021 WL 293122 (S.D.N.Y. Jan. 28, 2021) ..........................................25

*TrueSource, LLC v. Niemeyer*,
   2021 WL 9507721 (E.D.N.Y. Jan. 21, 2021) ........................................23

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
   2021 WL 535217 (E.D.N.Y. Feb. 12, 2021) ..........................................33

*U.S. Re Cos., Inc. v. Scheerer*,
   41 A.D.3d 52 (1st Dep't 2007) .............................................................16

*Universal Surv. Ctr., Inc. v. Precision Op.*, Inc.,
   2017 WL 11615247 (S.D.N.Y. Feb. 8, 2017) ..................................18, 19

*Vortexa Inc. v. Cacioppo*,
   2024 WL 2979313 (SDNY Jun. 12, 2024) ......................................24, 27

*Walden v. Fiore*,
   571 U.S. 277 (2014) .............................................................................12

*Watts v. Jackson Hewitt Tax Serv. Inc.*,
   675 F. Supp. 2d 274 (E.D.N.Y. 2009) ..................................................23

*Wedra v. Cree, Inc.*,
   2020 WL 1322887 (S.D.N.Y. Mar. 20, 2020) .......................................35

*Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*,
   2016 WL 5414979 (S.D.N.Y. Mar. 18, 2016) .......................................22

**TABLE OF AUTHORITIES**
(continued)

Page

**Statutes**

18 U.S.C.
    § 1836(b)(1) ...................................................................................................23
    § 1839(3) .........................................................................................................23
    § 1839(5) .........................................................................................................23

28 U.S.C. § 1404 ......................................................................................................14

Mass. Gen. Laws ch. 149
    § 24L(b)(i) .......................................................................................................17
    § 24L(c) ...........................................................................................................17
    § 24L(f) ...........................................................................................................14

**Court Rules**

CPLR
    § 301 .................................................................................................................8
    § 302(a) .................................................................................................8, 9, 10

Yext, Inc. ("Yext") is a trailblazer in the digital service provider industry. Since its founding almost twenty years ago, Yext has continually pushed the boundaries of innovation to reach its position as a market leader. More recently, having worked for years with large-language models and natural language search, Yext welcomed the power of artificial intelligence ("AI") and began integrating AI into its platform. With success comes competition, however, and SOCi, Inc. ("SOCi"), a smaller, newer industry member, has chosen to respond to Yext's success with jealousy and spite.

In this case, SOCi has concocted a hollow scheme that accuses Yext of using its confidential information to "unfairly" undermine its competitor. But this is not a dispute over stolen information or legitimate business interests; the only party known to systematically download and exploit other competitors' information is *SOCi*. Instead, this is a case where SOCi complains that employees left for better jobs with more pay—and where SOCi seeks to stop that free flow of labor, whether through illicit agreement to suppress wages, or *in terrorem* suits.

SOCi's First Amended Complaint (ECF No. 8 ("FAC")) fails for five primary reasons. ***First***, there is neither proper jurisdiction nor venue in this District as *none* of the individual defendants live or work in New York, and none took specific actions that would justify haling them into this Court. ***Second***, there is no plausible allegation that Yext tortiously interfered with contracts it did not know existed. ***Third***, the FAC cannot state a "trade secret" claim where it fails to identify any protectible trade secret, much less the theft or use of any such secret. ***Fourth***, the FAC's duplicative "conspiracy" theory fails as a matter of law due to the intracorporate conspiracy doctrine and the absence of an underlying tort. ***Fifth***, SOCi's ancillary claims fail because the unfair competition claim is merely duplicative of the "trade secret" allegation, and the unjust enrichment claim is an unsupported "catch-all."

To allow such unsupported claims to evade dismissal would reward SOCi's draconian approach and impose outsized costs on individual employees who did nothing more than avail themselves of better opportunities at Yext. Black-letter law, forum selection clauses that SOCi itself imposed, and the growing consensus against non-compete agreements all favor dismissal of the FAC.

## RELEVANT ALLEGATIONS

Yext is a digital presence service provider that allows multi-location brands to deliver consistent, accurate information to their customers from one central platform.[1] Yext was founded six years before SOCi (*compare* FAC ¶ 29, *with* https://www.yext.com/about (noting Yext was founded in 2006)) and, with the most robust and sophisticated platform, remains a market leader today, *see* FAC ¶ 83.

SOCi, a smaller company, now offers some of the services Yext does. FAC ¶ 30. SOCi blames its employee retention problems on Yext because five employees have joined Yext in the last eight months. FAC ¶¶ 50-81. Although SOCi alleges a "conspiracy" between all defendants, the employees—a random sampling of sales, marketing, and product people—did not work on the same team, for the same project, or with the same clients at SOCi, nor do they do so at Yext. *Id.*

The first of these SOCi employees joined Yext in January of 2024. For months, SOCi did nothing. SOCi did not send a reminder of obligations, much less a cease-and-desist letter until April 19, 2024. The only communication SOCi did send was a missive from SOCi's CEO to Yext's CEO, unsuccessfully proposing a problematic "no hire" pact because he was concerned that bidding wars over talent would result in SOCi needing to pay its employees more money. *See* ECF No. 31 (Yext's letter response to SOCi's pre-motion letter seeking expedited discovery) at 2.

---

[1] The Court can take judicial notice of Yext's public website, which has information about its services and platform: https://www.yext.com/about.

SOCi then waited another two months before filing its Original Complaint, alleging—after all this time—that Yext had taken its "trade secrets." (ECF No. 1 ("Original Complaint") ¶ 92).

Even now, more than seven months after employees began their exodus, SOCi has not moved for a preliminary injunction to stop the purported use of its trade secrets. FAC ¶ 112.

### *The FAC*

The FAC stands unsupported by facts but is rife with speculation. Yext is "*apparently* either stealing SOCi's technology *or* using SOCi's know-how as a short cut." FAC ¶ 111. Employees are alleged to "*most likely*" be using SOCi's information. FAC ¶ 105. SOCi states it "*believes*"—with no basis provided—that a former SOCi employee told Yext the names of SOCi employees to hire. FAC ¶ 77.

SOCi has not identified *any* forensic records showing downloads, uploads, print jobs, emails, or any other efforts to exfiltrate anything, despite accusing its former employees of "stealing" SOCi information, *see, e.g.*, FAC ¶¶ 1, 100, 111, 161, 172. Rather than comb its records (or present the findings of any such investigation), SOCi instead invokes speculation purportedly squeezed from a dissatisfied Yext "insider," working with SOCi.

SOCi's FAC provides no information about the individual, their status, or the basis for their purported statements, including whether they have *any* first-hand knowledge of the events described. Where the FAC requires facts, SOCi provides only innuendo.

Further, several of SOCi's implausible conjectures are contradicted by public facts. For example, SOCi claims Yext used secret information to rush out a press release of Yext's Listings Recommendations features, but in reality SOCi *publicly posted* that it would be rolling out its

listing product and thus invited being beaten to the punch, lawfully, by a competing product long in development. FAC ¶¶ 96-98; *see* Lockinger Decl.[2], Ex. A.

### *Individual Defendants*[3]

**Megan Menesale (Massachusetts)**

Menesale works remotely from her home in Massachusetts. FAC ¶ 20. She worked for SOCi for two years as Director of Product Marketing. FAC ¶¶ 75-76. Before SOCi, Menesale held Director of Product Marketing positions elsewhere for approximately five years.[4] She also has product marketing experience going back a decade.[5] SOCi terminated Menesale's employment on June 7, 2023. FAC ¶ 76. SOCi claims Menesale breached its noncompete agreement and "it is inevitable" that Menesale will disclose SOCi's "trade secret" marketing information. FAC ¶ 77. SOCi also claims without basis that it "believes" Menesale gave Yext the names of "key individuals to target for recruitment." FAC ¶ 77. Given state law, Menesale's Massachusetts residency undermines on its face SOCi's "non-compete" allegations, her termination by SOCi further weakens such claims, and she is not relying on SOCi information, but rather fifteen years in the field.

**Chris Brownlee (British Columbia)**

Brownlee was never even employed by SOCi. Brownlee worked, from his home in British Columbia, for Deel Canada Services, Inc. ("Deel"). FAC ¶¶ 18, 25. Through Deel, Brownlee provided services to SOCi for about a year-and-a-half, as a Senior Director of Product

---

[2] "Lockinger Decl." refers to the Declaration of Joseph Lockinger dated August 13, 2024, filed herewith.

[3] The individual defendants—Megan Menesale, Chris Brownlee, Stuart Greer, Keith Hadelman, and Jenette Simisky—are collectively referred to herein as the "Former SOCi Employees."

[4] *See* Menesale's public LinkedIn page at https://www.linkedin.com/in/mmenesale/details/experience/, a print-out of which is attached to the Lockinger Decl. as Ex. B.

[5] *Id.*

Management. FAC ¶ 62. He resigned on March 22, 2024. FAC ¶ 62.

Before Deel, Brownlee held senior director of product management and senior product manager roles, including at digital presence marketing firms, for nearly six years.[6] Brownlee does not have a noncompete agreement. *See* FAC ¶¶ 148-149. Brownlee's Deel Agreement included nonsolicit and nondisclosure obligations running to *Deel*—the "Employer" noted in the agreements that SOCi quotes, without ever providing the actual context or the defined meaning of the term "Employer." FAC ¶ 151. SOCi says Deel "assigned all of its rights" arising from the Deel Agreement to SOCi, but it fails to provide any support, much less details on the mechanism or timing of this assignment. *Id*. Nor does SOCi explain how this assignment retroactively transformed Brownlee's promises *to Deel*—promises not to solicit *Deel*'s customers and to keep *Deel's* information confidential—into promises owed to SOCi concerning its information and customers.

SOCi speculates that Brownlee "disclosed to other Yext employees detailed documentation about the Genius products" and that "[t]hese types of documents" contain "highly confidential and sensitive information," FAC ¶ 99, but nowhere indicates *what* information, if any, was trade secret, much less when, how, or where it was purportedly disclosed.

***Stuart Greer* (Michigan)**

Greer works remotely from Michigan. FAC ¶ 17. He was a Senior Director of Sales and worked for SOCi for three years. FAC ¶ 50. He left SOCi to join Yext in early April and started at Yext in May. FAC ¶¶ 50, 58. SOCi says Greer was "a first time manager at SOCi," FAC ¶ 58, but

---

[6] *See* Brownlee's public LinkedIn page, https://www.linkedin.com in/chrisbrownlee/details/ experience/, a print-out of which is attached to the Lockinger Decl. as Ex. C.

Greer is a veteran executive with over ten years' experience managing teams.[7]

The FAC lobs haphazard allegations in Greer's direction, claiming that in the normal course of his job at SOCi he had access to customer, pipeline, and prospect information, but it points to *no* factual support, forensic or otherwise, to indicate any misappropriation whatsoever. FAC ¶ 105. The FAC also contradicts its own allegations by, for example, alleging that Greer attended a Zoom meeting on April 19 for Yext, while elsewhere admitting he had not even started at Yext at that time. *Compare* FAC ¶ 11, *with* FAC ¶ 58. And while the FAC alleges without support that Greer contacted customers in SOCi's "pipeline" (essentially any business of a certain size with multiple locations), the FAC identifies *no* such customers. *See, e.g.*, FAC ¶ 105.

### Keith Hadelman (Georgia)

Hadelman works remotely from his Georgia residence. FAC ¶ 21. He worked in sales for SOCi for just seven months. FAC ¶ 78. Before that, Hadelman worked in sales for well over a decade at digital presence firms and other software companies—including at Yext, where he worked for nearly four years until 2021 as Director Sales, Enterprise (Financial Services) *before* ever joining SOCi.[8] The FAC says Hadelman resigned from SOCi on April 8, 2024, and returned to Yext as Director, Enterprise (Financial Services & Insurance) a few weeks later. *See* FAC ¶ 79 ("Hadelman resigned on April 8, 2024, and a few weeks later, he announced on LinkedIn that he had [re]joined Yext"). As with Greer, SOCi alleges Hadelman attended the supposed April 19 meeting, but the FAC does not allege he had been (re)employed by Yext on that date. *See id*.

### Jenette Simisky (Massachusetts)

---

[7] *See* Greer's public LinkedIn page, https://www.linkedin.com/in/stuart-greer-747155aa/details/experience/, a print-out of which is attached to the Lockinger Decl. as Ex. D.

[8] *See* Hadelman's public LinkedIn page, https://www.linkedin.com/in/keithhadelman/details/experience/, a print-out of which is attached to the Lockinger Decl. as Ex. E.

Simisky works remotely from Massachusetts. FAC ¶ 19. She worked at SOCi for about a year-and-a-half as a Senior Director of Product Management, until May 17, 2024, on SOCi's "Social" product. FAC ¶ 71. Before joining SOCi, Simisky had over ten years' product management experience, including years of experience with digital service providers for multi-location businesses.[9]

SOCi does not allege that Simisky solicited anyone or stole SOCi information. SOCi only says "it is inevitable" that Simisky will use SOCi's information to develop a social product at Yext. FAC ¶¶ 73, 143. But Yext has offered a social product for years and recently acquired Hearsay Systems, FAC ¶ 3, which has a fully developed social product that will complement the social features that Yext already offers.[10]

### *Employment at Yext*

Although SOCi alleges Yext tortiously interfered with the Former SOCi Employees' respective agreements by hiring them, the FAC admits four of the five employees resigned to work at Yext *before* SOCi provided any notice of those obligations. FAC ¶¶ 47, 50, 62, 76, 79. Where the law requires actual knowledge, SOCi relies on mere speculation to allege only that Yext "[a]lmost certainly" was aware of the obligations before employing the individual defendants. FAC ¶ 48.

At the time SOCi filed the FAC, all the Former SOCi Employees, except Simisky, had already been at Yext for between two to six months. FAC ¶¶ 58, 62, 76, 79. SOCi has yet to identify any harm resulting from any of the employees' employment at Yext.

---

[9]    *See* Simisky's public LinkedIn page, https://www.linkedin.com/in/jenette-simisky-b7807a17/details/experience/, a print-out of which is attached to the Lockinger Decl. as Ex. F.

[10] *See* Hearsay Social, https://www.hearsaysystems.com/resource/hearsay-social.

## ARGUMENT

### POINT I

### THE FORMER SOCI EMPLOYEES ARE NOT
### SUBJECT TO PERSONAL JURISDICTION

Plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendant. *Schultz v. Safra Nat'l Bank of N.Y.*, 377 F. App'x 101, 102 (2d Cir. 2010) (summary order). A plaintiff cannot rely on conclusory allegations to establish jurisdiction, and the court should not "draw 'argumentative inferences' in the plaintiff's favor." *See Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).[11]

Courts follow a two-step process when analyzing whether personal jurisdiction exists under New York law. *First*, the court must determine whether a statutory basis for general or specific personal jurisdiction exists under New York Civil Practice Law and Rules ("N.Y. CPLR") §§ 301 (general jurisdiction) or 302(a) (specific jurisdiction). *See, e.g.*, *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 547 (S.D.N.Y. 2001). *Second*, if the court identifies a statutory basis for jurisdiction under the CPLR, "the Court must [then] conduct a constitutional inquiry to determine whether the exercise of personal jurisdiction is consistent with the requirements of due process." *Id*.

## I.    NO STATUTORY BASIS FOR PERSONAL JURISDICTION EXISTS OVER THE FORMER SOCI EMPLOYEES.

### A.    The FAC neither asserts nor establishes general jurisdiction.

"[G]eneral jurisdiction requires affiliations so 'continuous and systematic' as to render the foreign [defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014). "For an individual, the paradigm forum for the exercise of general jurisdiction is

---

[11] Unless otherwise noted, all internal citations and quotations have been omitted and all emphasis is added.

the individual's domicile." *Id*. at 137. SOCi's FAC never asserts that this Court has general jurisdiction over the Former SOCi Employees. To the contrary, the FAC acknowledges none of them live or work in New York, FAC ¶¶ 17-21, and does not try to plead contacts sufficient to establish that this is one of the "truly exceptional occasions" where individuals are "'at home' in a state that is not otherwise their domicile." *Lebron v. Encarnacion*, 253 F. Supp. 3d 513, 519 (E.D.N.Y. 2017) (cleaned up). With no allegations that the Former SOCi Employees are domiciled or otherwise "at home" in New York, there can be no exercise of general jurisdiction.

### B. The FAC does not establish personal jurisdiction over the Former SOCi Employees.

#### 1. SOCi does not allege that the Former SOCi Employees committed any tortious acts within New York state.

For specific jurisdiction to attain, "[t]he New York Court of Appeals . . . require(s) that the defendant was *physically present* in New York when he committed the tort." *Hill v. HSBC Bank plc*, 207 F. Supp. 3d 333, 340 (S.D.N.Y. 2016); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 418 (S.D.N.Y. 2010) (citing cases); N.Y. CPLR § 302(a)(2).[12]

Here, SOCi does not allege that any of the Former SOCi Employees were physically present in New York when committing any purported tortious acts. While SOCi claims the "insider" told SOCi that "Yext held an internal sales meeting in New York *and via Zoom*, which was attended by Yext's sales and product leaders, as well as by Greer and . . . Hadelman," *neither Greer nor Hadelman are alleged to have been physically present*. FAC ¶ 11. If anything, SOCi implies they attended the purported meeting remotely because SOCi admits that both live and work out of state, FAC ¶¶ 17, 21, and does not allege either was employed by Yext at the time, *see* FAC ¶¶ 58, 79; *supra* at 6. There is no other allegation of tortious activity that even involves New York.

---

[12] SOCi does *not* claim that jurisdiction is proper pursuant to any of the other three enumerated sections under CPLR § 302(a)—only CPLR § 302(a)(2).

Courts consistently find such allegations insufficient for jurisdiction under N.Y. CPLR § 302(a)(2). In *DirecTV*, for example, this Court found that "numerous telephone conference calls" between a defendant and his employer's management team in New York, where there was no claim that the defendant was "'physically' present in New York when the [calls] occurred" cannot form a basis for jurisdiction. 691 F. Supp. 2d at 419; *see also Stein v. Annenberg Rsch. Inst.*, 1991 WL 143400, at *3 (S.D.N.Y. July 19, 1991) ("[F]ederal cases construing § 302(a)(2) . . . have uniformly held that jurisdiction under [CPLR § 302(a)(2)] cannot be predicated on telephone calls made or letters mailed into this State.").

SOCi therefore fails to allege physical presence in New York—"a prerequisite to jurisdiction under § 302(a)(2)"—for any purported tortious acts by any of the Former SOCi Employees. S*ee Thackurdeen v. Duke Univ.*, 660 F.App'x 43, 46 (2d Cir. 2016).

### 2.    SOCi fails to plead conspiracy jurisdiction.

In a last-ditch effort, SOCi argues that this "Court has specific jurisdiction over the Former Employees because they are co-conspirators acting in furtherance of a conspiracy taking place in New York." FAC ¶ 27. But SOCi does not recite—let alone allege facts sufficient to plausibly state—the elements a plaintiff must show to qualify for conspiracy jurisdiction.

*First*, a plaintiff must plead "a prima facie showing of conspiracy," *Related Companies, L.P. v. Ruthling*, 2017 WL 6507759, at *13 (S.D.N.Y. Dec. 18, 2017). For the reasons discussed *infra* at 30-33—not least of which is the fact that "[a] corporation cannot conspire with itself or with its own employees or agents"—SOCi fails to make a prima facie showing of conspiracy, *see Boneta v. Rolex Watch USA, Inc.*, 232 F. Supp 3d 354, 359 (S.D.N.Y. 2017) (dismissing conspiracy claim because of intracorporate conspiracy doctrine).

*Second*, once a plaintiff alleges a prima facie case, it must demonstrate that the out-of-state defendants' membership in the conspiracy brings them under the Court's jurisdiction by showing,

among other things, that the New York-based conspirator's actions were "for the benefit of the out-of-state conspirators" and done "at the behest of or on behalf of, or under the control of the out-of-state conspirators." *Biz2Credit, Inc. v. Kular*, 2015 WL 2445076, at *8 (S.D.N.Y. May 21, 2015). SOCi cannot meet this requirement. Yext is the only "co-conspirator" that SOCi alleges is in New York, FAC ¶ 23, so SOCi must allege that Yext engaged in its "conspirator" activity "for the benefit of" and "*at the behest or on the behalf of, or under the control of*," the out-of-state Former SOCi Employees. *See Biz2Credit*, 2015 WL 2445076, at *8. The FAC indisputably alleges the reverse. *See, e.g.*, FAC ¶¶ 119-20 ("None of the Former Employees would have breached their Non-Competes . . . [or] their Non-Solicitation or Confidentiality obligations if not for the actions of Yext – in fact, these breaches . . . *were done at Yext's instruction and direction*").

SOCi therefore fails to allege that jurisdiction should be conferred on the out-of-state Former SOCi Employees. *See Related Companies, LLP*, 2017 WL 6507759, at *14 (finding no conspiracy jurisdiction where "taking all of the allegations in the light most favorable to plaintiffs, [the out-of-state defendants] acted at the behest of . . . the purported in-state co-conspirator, not the other way around"); *Biz2Credit*, 2015 WL 2445076, at *8 ("Even assuming that Plaintiff made a *prima facie* showing of conspiracy, . . . Plaintiff's allegations are devoid of any suggestion that [the in-state] Defendant acted on behalf of, under the control of, or for the benefit of [the out-of-state] Defendant[s].").

## II. THE EXERCISE OF PERSONAL JURISDICTION WOULD VIOLATE DUE PROCESS.

Constitutional due process prohibits the exercise of jurisdiction in the absence of sufficient "minimum contacts" with the forum state, or where the exercise of personal jurisdiction would be unreasonable. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

The exercise of jurisdiction over the Former SOCi Employees would also violate the

employees' due process rights, including because SOCi cannot establish minimum contacts between New York and these employees. The same dearth of allegations regarding the Former SOCi Employees' actions in New York forecloses a finding of minimum contacts. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[T]he relationship must arise out of contacts that the 'defendant [itself]' creates with the forum State," not "contacts between the plaintiff (or third parties) and the forum State.").

Nor would exercising jurisdiction be reasonable. The Former SOCi Employees, who all live and work outside of New York, would face a substantial burden litigating in New York. Moreover, New York is not an efficient forum because the claims levied against the Former SOCi Employees arise out of purported actions they took in Massachusetts, Michigan, Georgia, or British Columbia, *see* FAC ¶¶ 17-21—not actions in New York. Exercising jurisdiction under these circumstances would lead to the troubling conclusion that employees could be forced to litigate employment disputes in any state in which their employer was headquartered, regardless of whether the employee had any contacts with the state.

This Court's exercise of personal jurisdiction over the individual defendants is therefore not only impermissible under statutory law, but it would also violate the due process guarantees set forth in the Constitution. *See, e.g.*, *Metro. Life*, 84 F.3d at 573-75 (dismissing a case because "the exercise of personal jurisdiction would be decidedly unreasonable").

Nor can SOCi evade this result by pointing to a phrase in its contracts allowing for litigation in a "court of competent jurisdiction." FAC ¶¶ 24-25. As a matter of law and logic, a "court[] which lacks personal jurisdiction . . . is not a court of competent jurisdiction." *See Meyer v. Bd. Of Regents of Univ. of Okla.*, 2015 WL 13653970, at *3 (S.D.N.Y. Apr. 7, 2015); *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 137 (2017) (inclusion of phrase "any court of competent jurisdiction"

merely permitted suit in any state or federal court *already endowed* with subject-matter jurisdiction over the suit) (emphasis in original).

For all the foregoing reasons, this Court lacks personal jurisdiction over the Former SOCi Employees and the FAC's claims against them should be dismissed.

## POINT II

### VENUE IS IMPROPER FOR THE CLAIMS
### AGAINST THE FORMER SOCI EMPLOYEES

"For venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question[.]" *Fisher v. Int'l Student Exch., Inc.*, 38 F. Supp. 3d 276, 284 (E.D.N.Y. 2014) (emphasis in original) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)). Here, SOCi has not sufficiently alleged that any activity by the Former SOCi Employees occurred in New York. All significant events material to SOCi's claims against the Former SOCi Employees are alleged to have taken place in the out-of-state residences of these employees. *See* FAC ¶¶ 17-21. Venue is thus improper. *See, e.g.*, *Perrone v. Catamount Ski Resort, LLC*, 2020 WL 2538464, at *6 (S.D.N.Y. May 19, 2020) (finding venue improper where the significant events giving rise to plaintiff's claims occurred in another district).

Also, SOCi contractually agreed that litigation with the Former SOCi Employees would occur elsewhere. Accordingly, even if jurisdiction were available (and it is not), this Court would still properly transfer SOCi's actions against the Former SOCi Employees to the parties' contractually selected forums. Indeed, SOCi *admits* it cannot bring claims against the Former SOCi Employees for money damages in this forum, so the issue of piecemeal litigation is entirely a problem of SOCi's own making in designing its own contracts, each pointing to different forums, and none pointing to New York. The *only* theoretical grounds for suit in this venue would thus be a request for injunctive relief, but (a) that still requires jurisdiction, which is lacking, (b) the venue

would still be inconvenient and improper, and (c) SOCi has not even moved for injunctive relief, nearly eight months after the employees began leaving for Yext.

Further, both Menesale and Simisky are Massachusetts-based employees alleged to have breached their noncompete obligations to SOCi, which means that under governing Massachusetts law, any action against them must be brought "in the county where the employee resides." Massachusetts Noncompetition Agreement Act ("MNAA") (M.G.L. ch. 149, § 24L(f)); *see also Cynosure LLC v. Reveal Lasers LLC*, 2022 WL 18033055, at *9 (D. Mass. Nov. 9, 2022) (concluding the requirements of the MNAA apply if the noncompete agreement is with a Massachusetts-based employee regardless of governing law provisions).

Under 28 U.S.C. § 1404, a court may transfer a civil action to any other district where the case might have been brought if the transfer would serve "the convenience of the parties" and "the interests of justice." Both factors favor transfer. If the FAC's claims against the Former SOCi Employees are not dismissed or transferred, the employees may be forced to undergo two rounds of litigation in competing forums. This is highly inconvenient for all involved (certainly for individual employees) and a waste of judicial resources. *See Mulgrew v. U.S. Dep't of Transp.*, 2024 WL 665948, at *5 (E.D.N.Y. Feb. 17, 2024) (finding transfer appropriate where forcing party to litigate in two competing districts would sap judicial resources).

### POINT III

### THE AMENDED COMPLAINT FAILS
### TO STATE ANY PLAUSIBLE CLAIM

**I.    PLAINTIFF'S BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED.**

**A.    SOCi's breach of contract claims fail because SOCi does not demonstrate plausible grounds for harm that this Court can address.**

Even if SOCi could establish personal jurisdiction over these out-of-state Former SOCi

Employees for (only) injunctive relief, the claims would still be subject to dismissal because where a claimant "fails to supply a legal basis for seeking an injunction," it has "failed to state a claim on which the relief [it] seek[s] can be granted." *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 293, 294 (S.D.N.Y. 1995) (granting 12(b)(6) dismissal).

It is undisputed that SOCi cannot seek money damages on its breach of contract claims against the Former SOCi Employees—the only defendants with which SOCi even has a contract. *See supra* at 13. SOCi thus requests only injunctive relief, seeking the drastic remedy that the Former SOCi Employees "be enjoined from continuing to work for Yext in violation of their [restrictive covenant] obligations." FAC pp. 40-41, Part D.

But a plaintiff seeking injunctive relief must show, among other factors, that it has "suffered an irreparable injury" and that "monetary damages[] are inadequate to compensate for that injury." *Bohnak v. Marsh & McLennan Cos., Inc.*, 580 F. Supp. 3d 21, 31 (S.D.N.Y. 2022) SOCi's FAC does not identify actual irreparable injury even though almost *eight months* have passed since the first SOCi employee joined Yext, and all the Former SOCi Employees (excepting Simisky) have been with Yext for *at least three months*. FAC ¶¶ 58, 62, 76, 79. Nor has SOCi moved for a TRO or preliminary injunction. Clearly, the harm it claims to be worried about is neither immediate nor irreparable. *See Hessel v. Christie's Inc.*, 399 F. Supp. 2d 506, 520-21 (S.D.N.Y. 2005) (delay of two months supports denial of injunctive relief).

Plus, SOCi has not plausibly alleged how or why money damages are inadequate to compensate for any of the generalized harm it alleged. Courts find that, like here, where a defendant is alleged "only to use [trade] secrets—without further dissemination or irreparable impairment of value—in pursuit of profit," there is no presumption of irreparable harm because "damages will often provide a complete remedy for such an injury." *Faiveley Transp. Malmo AB*

*v. Wabtec Corp.*, 559 F.3d 110, 118-19 (2d Cir. 2009). Indeed, the FAC indicates SOCi *will* seek monetary damages against Yext (though not on the contract claims because there is no contract with Yext) and the Former SOCi Employees (though not in this Court because that is squarely barred by SOCi's own contracts).

Similarly, SOCi's allegation that Yext is somehow targeting SOCi customers through the Former SOCi Employees fails to show irreparable harm because "the value of the transactions lost as a result of the alleged breach" would be compensable by damages. *U.S. Re Cos., Inc. v. Scheerer*, 41 A.D.3d 52, 155 (1st Dep't 2007) (reversing and vacating preliminary injunction). Indeed, in *Arnold K. Davis & Co. v. Ludemann*, the court found no irreparable harm even though the defendant had contacted 44 former customer accounts. 160 A.D.2d 614 (1st Dep't 1990); *see also Liberty Power Corp., LLC v. Katz*, 2011 WL 256216, at *7 (E.D.N.Y. Jan. 26, 2011) (finding that harm was not irreparable where plaintiff alleged that defendant's misappropriation would result in lost contracts with a "finite-albeit large-number of customers").

Under such circumstances, courts in this District routinely dismiss contract claims like SOCi's. *See, e.g.*, *Bohnak*, 580 F. Supp. 3d at 31 (granting dismissal where plaintiffs failed to show irreparable harm warranting injunctive relief) (*rev'd and remanded on other grounds*); *see also Reuben H. Donnelley Corp.*, 893 F. Supp. at 294 (granting 12(b)(6) motion because the party seeking injunctive relief "fail[ed] to establish that they [would] suffer irreparable harm by demonstrating the inadequacy of money damages"). This case should be no exception.

### B.    SOCi fails to state a contract claim against any Former SOCi Employee.

#### 1.    SOCi has not plausibly alleged a valid contract with, or breach of that contract by, Simisky or Menesale.

SOCi cannot sustain a breach of contract claim against either Simisky or Menesale because (1) their noncompete obligations are unenforceable under the MNNA as a matter of law, (2) there

is no allegation of a breach of their nonsolicitation obligations, and (3) SOCi fails to plausibly allege any breach of their nondisclosure obligations.

*First*, Massachusetts law governs any noncompetition agreements entered into after October 1, 2018. The MNNA generally bans noncompetes unless they meet certain requirements. Among other things, the MNNA requires that noncompetes (a) expressly state that the employee has the right to consult with counsel prior to signing, and (b) pay garden leave—at least 50% of the employee's annual base salary at the highest level during the past two years—for the length of the restricted period or "other mutually-agreed upon consideration." Mass. Gen. Laws ch. 149, § 24L(b)(i), (vii). SOCi had Menesale and Simisky enter noncompetes in June 2021 and November 2022, respectively, *without* noticing the right to counsel and *without* providing garden leave or any other mutually-agreed upon consideration. FAC ¶¶ 71, 75; *see* Lockinger Decl. Exs. G, H. As such, both Simisky and Menesale's noncompetition agreements are unenforceable, and no breach of contract claim can exist thereunder. *See KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, 2021 WL 2982866, at *32-33 (D. Mass. July 15, 2021) (concluding that an employee's agreement violates the MNAA because it "does not expressly state that [the employee] has the right to consult with counsel prior to signing, and it does not contain a garden leave clause or another mutually agreed upon form of consideration"). Moreover, SOCi terminated Menesale's employment, and the MNNA bars enforcement of noncompetes against employees that have been terminated without cause or laid off. Mass. Gen. Laws ch. 149, § 24L(c).[13]

*Second*, the FAC also does not allege Simisky or Menesale breached their nonsolicitation obligations. *See Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 91 (S.D.N.Y. 2022)

---

[13] In any case, the one-year term of Menesale's noncompete obligation has already elapsed, as her employment with SOCi ended in June 2023.

(dismissing breach of contract claim "[g]iven the virtual absence of non-conclusory allegations of . . . the conduct that allegedly breached such agreement").

*Third*, the FAC fails to plausibly allege a breach of Simisky and Menesale's nondisclosure obligations. For Simisky, the FAC does not allege *any* breach of any nondisclosure obligation. As for Menesale, the FAC alleges only that SOCi "*believes* that Menesale has shared with Yext the names of key individuals to target for recruitment." FAC ¶ 77. This allegation is purely speculative, and "[c]onclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim." *See Universal Surv. Ctr., Inc. v. Precision Op.*, Inc., 2017 WL 11615247, at *2 (S.D.N.Y. Feb. 8, 2017) (dismissing breach of contract counterclaim that contains only conclusory allegations); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) ("Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract."). Absent the required, factually supported allegations that the contract was (a) valid, and (b) breached, the contract claims against Simisky and Menesale should be dismissed. ‼

### C.    SOCi has failed to allege a contract claim against Christopher Brownlee, including because Brownlee had no contract with SOCi.

The FAC fails to plausibly allege any contract between SOCi and Brownlee, much less breach of any such contract. Brownlee does not have a noncompete. *See* FAC ¶¶ 148-49. His employment agreement was with Deel—not SOCi—and included nonsolicit and nondisclosure obligations running to Deel. FAC ¶¶ 25, 151. Here, to support its tenuous claims, SOCi offers only a blanket statement that Deel "assigned all of its rights arising from the [Deel Agreement], including enforcement rights, to SOCi." FAC ¶ 151. However, the FAC offers no details on the operation of this assignment *or* how such an assignment would retroactively transform Brownlee's promises *to Deel* into promises owed to SOCi. Nor is there any allegation that Brownlee solicited anyone from Deel or disclosed any Deel information.

More broadly, SOCi does not allege that Brownlee solicited *anyone*, from Deel, SOCi, or otherwise, to join Yext. *See Garvey*, 634 F. Supp. 3d at 91 (dismissing contract claim given the lack of "non-conclusory" factual allegations supporting a claim of breach). Instead, SOCi speculates—based solely on unverified information from a purported Yext "insider"—that Brownlee disclosed confidential and sensitive SOCi information to other Yext employees. FAC ¶ 99. But *nowhere* does SOCi say when or where Brownlee is alleged to have disclosed this information, in what manner he purportedly disclosed it, or even the specific information that was disclosed. *Id.* Courts regularly hold that such speculation is insufficient to support a breach of contract claim. *See Universal Surv. Ctr., Inc.*, 2017 WL 11615247, at *2 (dismissing breach of contract counterclaim that contains only conclusory allegations); *Berman*, 580 F. Supp. 2d at 202 ("Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract."). Even if Brownlee's agreement with Deel had somehow created obligations concerning SOCi's information, the FAC's conclusory allegations regarding Brownlee's nondisclosure obligations are insufficient to state a claim for breach of contract.

> **D.**    **SOCi fails to plausibly allege a valid, enforceable contract with Greer or Hadelman.**

Where a contract is unenforceable there can be no breach. *See M&C Saatchi PR LLP v. Beer Frost, Inc.*, 2019 WL 2717199, at *7 (S.D.N.Y. June 28, 2019) ("A viable claim for breach of contract requires an enforceable agreement.").

Greer's and Hadelman's noncompetes with SOCi are unenforceable because, among other reasons, they are facially overbroad and enforcement here is devoid of a legitimate business interest. These agreements purport to be governed by Delaware law,[14] which does "not

---

[14] Defendants apply Delaware law for the purpose of this motion to dismiss only because Greer's and Hadelman's noncompete agreements with SOCi state that they are governed by Delaware law. *See* Lockinger Decl., Exs. I, J (Section 7 ("Miscellaneous")).

'mechanically' enforce restrictive covenants." Instead, such agreements are "scrutinized" to ensure that they "(1) are reasonable in geographic scope and temporal duration, (2) advance a legitimate economic interest of the party seeking its enforcement, and (3) survive a balancing of the equities." *FP UC Holdings, LLC v. Hamilton*, 2020 WL 1492783, at *6 (Del. Ch. Mar. 27, 2020). !

Greer and Hadelman's noncompetes are unreasonably overbroad because they would restrict the employees from working on *any* sales team in the digital presence industry in the world. *See* Lockinger Decl., Exs. I, J (Section 4 ("Restrictions") (prohibiting the employees during the restricted period from performing substantially similar responsibilities that "relate[]" to SOCi or "its demonstrably planned interests" "anywhere [SOCi] offers its services or has customers during [the employees'] employment"). The noncompetes' overbreadth bars enforcement, and Delaware courts resist blue-penciling to make an overbroad provision reasonable. *Hub Grp., Inc. v. Knoll*, 2024 WL 3453863, at *10-12 (Del. Ch. July 18, 2024) (finding a noncompete unenforceable where it prohibited the employee from working for a competing business in the restricted territory "in a capacity relating to the provision, management, development, manufacture, marketing, sales or operation of any Competing Services" and "in a position with responsibilities similar to those" the employee had with the former employer); *Sunder Energy, LLC v. Jackson*, 305 A.3d 723, 755-58 (Del. Ch. 2023) (finding a noncompete that banned employment in an "entire . . . industry" to be overly broad and thus unenforceable).

Moreover, enforcement of Greer and Hadelman's noncompetes is not supported by a legitimate business interest. SOCi's desire to protect against future employee attrition is expressly "illegitimate." *Sunder Energy* at 755 (Del. Ch. 2023). Nor can protection of trade secret information serve as a legitimate interest when no trade secrets have been adequately alleged and

identified, *see infra* at 23-26. No other interest has been identified in the FAC.

Thus, the FAC cannot state a claim based on Greer's and Hadelman's unenforceable noncompetes.[15] SOCi's claims regarding their nonsolicit and nondisclosure obligations also fail because SOCi has not stated any plausible claim for injunctive relief—the only relief it can seek on its contract claims. This is particularly true with Greer and Hadelman, who work in sales. The only harm arising from their purported contract breaches is loss of customer accounts, *see* FAC ¶¶ 101-110, which is readily compensable by money damages, *see supra* at 16.

## II.    PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED.

### A.    SOCi's tortious interference claim fails because SOCi has not adequately pleaded breach of a valid contract.

SOCi's claim of tortious interference fails because it has not adequately pleaded the breach of any valid contract, much less knowing, intentional interference with any such contract. *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 2018 WL 1273343, at *10 (S.D.N.Y. Mar. 5, 2018). Menesale and Simisky's agreements are not valid under Massachusetts law. *See supra* at 16-17. Brownlee's contractual obligations run to Deel, not SOCi. *See supra* at 18. Greer's and Hadelman's agreements are overbroad and enforcement does not advance a legitimate business interest, as is required for injunctive relief under the governing law. *See supra* at 19-21. Without valid contracts or adequately pleaded breach, SOCi cannot state a claim for tortious interference. *See MJMAdvertising v. Panasonic Indust. Co.*, 29 A.D.2d 265, 266 (1st Dep't 2002) (affirming dismissal of tortious interference with contract claim because no valid contract existed); *Garvey*, 634 F. Supp. 3d at 91 (same).

### B.    SOCi fails to allege "actual knowledge" of the relevant contracts.

---

[15] The noncompetes for all other individual defendants, except Brownlee (who has no such contract with SOCi), fail for the same reason.

"New York law emphasizes the requirement that a tortious interference with contract claimant establish that the defendant purposefully intended to cause a contract party to breach a particular contract." *Conte v. Emmons*, 895 F.3d 168, 172 (2d Cir. 2018). As such, a defendant "must have actual knowledge of the contract's existence, and conclusory allegations that a defendant knew or should have known of a contract are insufficient to plead a tortious interference with contract claim." *GWG MCA Capital, Inc. v Nulook Capital, LLC*, 2020 WL 10508196, at *14 (E.D.N.Y. June 28, 2020); *A.V.E.L.A., LLC*, 2018 WL 1273343, at *11 ("General allegations that a party knew or should have known about the contract in question fall short.").

Here, the FAC offers only conclusory allegations that are insufficient to plead actual knowledge. Specifically, SOCi alleges Yext had knowledge of a cease-and-desist letter that SOCi sent on April 19, 2024, and that Yext itself has employees sign restrictive covenants to allege constructive knowledge. FAC ¶¶ 47-48. Neither of these allegations is sufficient. The first is implausible, just based on the FAC's own asserted chronology. Four of the five Former SOCi Employees (Greer, Brownlee, Hadelman, and Menesale) had already left SOCi to join Yext *before* Yext received this April 19 letter.[16] *See* FAC ¶¶ 50, 62, 76, 79. SOCi's 13th hour letter could not retroactively provide notice to Yext of the employees' contractual obligations at the time when the decision was made to hire. The allegations concerning Yext's constructive knowledge based on its own alleged restrictive covenants fare no better. It is well-established that "industry practice is not sufficient to show actual knowledge." *Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*, 2016 WL 5414979, at *4 (S.D.N.Y. Mar. 18, 2016).

---

[16] Although Simisky was hired after April 19, Simisky does not have enforceable contract for Yext to interfere with. *See MJMAdvertising v. Panasonic Industr. Co.*, 294 A.D.2d 265, 266 (1st Dep't 2002) (affirming dismissal of tortious interference with contract claim because no valid contract existed).

SOCi's reliance on *post-hiring* knowledge of the agreements and conduct is similarly unavailing. *See TrueSource*, 2021 WL 9507721, at \*4 (finding post-hiring knowledge of a non-compete agreement insufficient to allege knowledge of the agreement *at the time of hire*).

### C.    SOCi has alleged only future harm.

Claims for tortious interference that fail to adequately allege damages are properly dismissed. *See Watts v. Jackson Hewitt Tax Serv. Inc.*, 675 F. Supp. 2d 274, 282 (E.D.N.Y. 2009) (dismissing tortious interference with contract claim for failure to allege any actual monetary damages).

SOCi, however, merely alleges the possibility of some undefined future harm. *See, e.g.*, FAC ¶ 100 ("Yext *can* use the confidential and trade secret information"); FAC ¶ 145 ("Defendants' misappropriation of SOCi's trade secrets *will* cause SOCi to suffer harm"); FAC ¶ 155 ("Yext *can* also use the Former Employee's knowledge of SOCi's confidential information"). The FAC does not identify a single customer that has actually switched to Yext as a result of the alleged misappropriation. Absent factual allegations supporting this essential element, SOCi's claim for tortious interference should be dismissed.

## III.    PLAINTIFF'S TRADE SECRET CLAIMS SHOULD BE DISMISSED.

SOCi fails to state a claim for trade secret misappropriation because SOCi does not plausibly allege that: (1) SOCi possessed a trade secret; and (2) Defendants misappropriated the trade secret. 18 U.S.C. §§ 1839(3), (5); 18 U.S.C. § 1836(b)(1).[17]

### A.    SOCi fails to plead the existence of a protectable trade secret.

Although trade secret claims face no heightened pleading requirement, "[d]istrict courts in

---

[17] Because the requirements for pleading trade secret misappropriation under New York and federal law are "fundamentally the same," the same analysis applies for both. *Iacovacci v. Brevet Holdings, LLC*, 437 F.Supp.3d 367, 380 (S.D.N.Y. 2020).

this circuit typically require that allegations of misappropriation plead the existence of trade secrets with sufficient specificity to inform the defendants of what they are alleged to have misappropriated." *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machs. Corp.*, 2022 WL 889145, at *4 (S.D.N.Y. Mar. 25, 2022). !

Here, SOCi fails to allege its trade secrets with sufficient specificity and does not allege sufficient measures taken to protect its alleged trade secret information.

### 1.    Plaintiff has not identified trade secrets with sufficient specificity.

Confidential information and trade secrets are not the same; trade secrets "are a subset of confidential information" and alleging their existence "requires much more specificity as to the information owned by the claimant." *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (cleaned up). As a threshold matter, the FAC mistakenly conflates confidential and trade secret information. The FAC also lists only general categories of information such as "customer lists," "product roadmaps," and "marketing materials." *See, e.g.*, FAC ¶ 124.

Courts regularly dismiss trade secret claims that allege only general categories of information because they do not adequately put the defendant on notice of the boundaries of the alleged misappropriation. *See Aira Jewels, LLC v. Mondrian Collection, LLC*, 2024 WL 1255798, at *4-6 (S.D.N.Y. Mar. 25, 2024) (finding a failure to plausibly allege the existence of a trade secret where plaintiff identified its trade secrets as "customer lists, client contacts, supplier contacts, sales, marketing, and business strategies"). These generalities are particularly problematic here because SOCi relies on information that Former SOCi Employees rightly had access to in the course of their employment and points to *no* tangible materials, documents, or records they allegedly took with them. *See e.g.*, *Vortexa Inc. v. Cacioppo*, 2024 WL 2979313, at *11 (SDNY Jun. 12, 2024) ("[C]onclusory assertions of the kind of information [defendant] was

-24-

exposed to do not suffice to show that [defendant] possessed trade secrets").

SOCi's tying these general categories to the Genius Product line, *see, e.g.*, FAC ¶¶ 67, 74, does not cure the insufficiency because without the requisite specificity, tying general categories to a product line does not put the Defendants on notice as to the nature of the purported trade secret. *See Core SWX, LLC v. Vitec Grp. US Holdings, Inc.*, 2022 WL 3588081, at *7 (E.D.N.Y. July 14, 2022) (finding allegations insufficient where pleading merely tied two general categories of information to two products, as opposed to a specific algorithm, specific portion of the product, or specific document). Similarly, tying these general categories to alleged customers or prospects, *see, e.g.*, FAC ¶¶ 105, 107, is insufficient to put Defendants on notice of confidential information— let alone a purported trade secret. *See EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 315 (S.D.N.Y. 1999) ("[A]n employee's recollection of information pertaining to specific needs and business habits of particular customers is not confidential."), *aff'd*, 2000 WL 1093320 (2d Cir. 2000) (summary order).

SOCi's overbroad, generalized allegations therefore fail to meet the level of specificity required under the DTSA. *See TRB Acquisitions LLC v. Yedid*, 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (dismissing plaintiff's DTSA claim with prejudice where the amended complaint "describes nothing more than general categories of information and data").

### 2. Plaintiff has not taken reasonable measures to protect its alleged trade secret information.

SOCi's failure to plead efforts taken to maintain the secrecy of the information at issue is also fatal to its claim of trade secret misappropriation. *See Garvey* 634 F. Supp. at 97-98 (party who failed to adequately plead reasonable measures to protect the specific information at issue failed to state a trade secret claim). And use of a confidentiality agreement alone as a safeguard does not suggest the existence of a trade secret. *See Elsevier*, 2018 WL 557906, at *4, *6 ("Taking

steps to protect information through a confidentiality agreement does not, on its own, suggest the existence of a bona fide trade secret[].").

The FAC invokes only standard employment agreements or routine measures covering information generally, with nothing specific showing protection of any asserted trade secrets. FAC ¶¶ 33-43. *See Lawrence v. NYC Med. Prac., P.C.*, 2019 WL 4194576, at *5 (S.D.N.Y. Sept. 3, 2019) (finding a lack of reasonable measures where the complaint included only conclusory statements that former employees signed employee agreements, without further facts regarding trade secret protections); *Insulet Corp. v. EOFlow, Co.*, 104 F. 4th 873, 881 (Fed. Cir. 2024) (noting the DTSA requires a showing of reasonable measures "to protect [the] *specific* information alleged to be trade secret"). The FAC failed to allege reasonable measures tied to *any* purported trade secret, which is, on its own, sufficient grounds for dismissal. *See Garvey*, 634 F. Supp. 3d at 97-98 (dismissing DTSA counterclaim where allegations failed to plead efforts to maintain the secrecy of the information at issue).

### B.    Plaintiff fails to plead misappropriation or use.

SOCi has had *months*—more than half a year from when the first SOCi employee joined Yext—to investigate its claims against the defendants. But SOCi has not identified any records, forensic or otherwise (*e.g.*, emails, print jobs), showing any efforts to exfiltrate SOCi's confidential information or trade secrets. Let alone *use* of the purported stolen information. This is fatal to its misappropriation claim.

#### 1.    Inevitable disclosure allegations are not sufficient to state a misappropriation claim.

The FAC does not allege an actual theft or misappropriation of any trade secret.[18] Instead, SOCi relies almost entirely on the theory that these employees will "inevitably" disclose some unidentified "trade secret" information they had access to at SOCi, which they may or may not recall months after their employment ended. *See, e.g.*, FAC ¶ 57 (access to information Greer recalls gives Yext unfair advantage); FAC ¶ 69 (impossible for Brownlee not to disclose his knowledge of SOCi's Genius product line); FAC ¶ 73 (Yext can access Simisky's knowledge of SOCi's products); FAC ¶ 77 (inevitable that Menesale will disclose marketing information). It is hardly plausible to allege the employees have been in their new roles for months apparently without incident, and to simultaneously seek prospective relief because they will "inevitably" use old information at some point in the future. *See e.g.*, *Vortexa Inc.*, 2024 WL 2979313, at *13 ("the test is whether disclosure is inevitable, not whether an opportunity or possibility of disclosure exists"). Regardless, this future-looking and essentially speculative harm associated with the inevitable disclosure doctrine is not a sufficient basis to survive a motion to dismiss for a trade secret misappropriation claim. *See Janus et Cie v. Kahnke*, 2013 WL 5405543, at *4 (S.D.N.Y. Aug. 29, 2013) (dismissing trade secret misappropriation claim premised on inevitable disclosure and finding that the "disfavored doctrine should [not] be recognized as a stand-alone claim outside the preliminary injunction context, where the irreparable harm standard safeguards against speculative claims").

      **2.**      **Conclusory and speculative allegations are not sufficient to allege misappropriation or use.**

---

[18] Although FAC ¶ 57 makes a speculative assertion that the Former SOCi Employees "apparently" took documents with them, there are no facts alleged supporting that conclusion. The closest allegation is the statement of an unnamed, unverified Yext "insider" that on some unspecified date Brownlee disclosed "product decks and pitch decks" relating to the Genius product line to other Yext employees. FAC ¶ 99. This singular allegation fails to state a misappropriation claim for the reasons set forth *infra* at 28-29.

>    a.    **The FAC fails to plausibly plead misappropriation or use of SOCi's trade secrets by the Former SOCi Employees.**

There are no allegations that Simisky misappropriated SOCi's trade secret information for Yext's benefit. The allegation that Menesale "shared with Yext the names of key individuals to target for recruitment" is unavailing because the names of SOCi employees are readily available online and are not trade secret information. FAC ¶ 77; *see Garvey*, 634 F. Supp. 3d at 97 (information is not considered trade secret when it is "readily ascertainable outside the employer's business"). Although SOCi makes a conclusory claim that Hadelman disclosed trade secret information to Yext based on his presence at a particular Yext meeting, FAC ¶ 80, this allegation fails because such "circumstantial" datapoints do not serve to state a plausible claim. *Ad Lightning Inc. v. Clean.io, Inc.*, 2020 WL 4570047, at *3 (S.D.N.Y. Aug. 7, 2020).

The FAC also alleges—based solely on the statement of an unnamed, unverified Yext "insider"—that Brownlee disclosed confidential SOCi information to other Yext employees, FAC ¶ 99, but this *singular* allegation of misappropriation by Brownlee is insufficient for two reasons. *First*, it is based entirely on a speculative statement of an unnamed Yext "insider," which is akin to pleading on information and belief—and which by law should be disregarded when not accompanied by sufficient data to justify interposing an allegation on the subject. *See., e.g.*, *Negrete v. Citibank, N.A.*, 187 F Supp 3d 454, 461 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) (holding that while "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded'").

Here, SOCi cannot escape this pleading requirement by simply citing to the unnamed purported Yext insider as the source of the information. For example, the FAC never states the

insider was present when the alleged disclosure took place, does not identify when or how the information was disclosed, and does not identify what information was disclosed, instead merely referencing, in the broadest terms, product or pitch decks. This fails to plausibly allege disclosure. *See My Mavens, LLC v. Grubhub, Inc.*, 2023 WL 5237519, at *22-23 (S.D.N.Y. Aug. 14, 2023) (dismissing plaintiff's misappropriation claims under both the DTSA and New York state law where plaintiff's misappropriation allegations constitute merely "a ladder of suppositions that fail the plausibility test").

*Second*, the allegation states only that Brownlee disclosed "highly confidential and sensitive information" but not *trade secret information*—and New York courts have emphasized that the two categories are *not* interchangeable. *See* FAC ¶ 99; *Elsevier*, 2018 WL 557906, at *6 ("[T]rade secrets are a subset of confidential information and alleging their existence requires much more specificity as to the information owned by the claimant.") (cleaned up).

Similarly, the allegations concerning Greer using or disclosing SOCi trade secrets are not plausible. As an initial matter, the very premise of the allegation that Greer *must have* used SOCi trade secrets based on him allegedly contacting existing SOCi customers is misplaced. Mere "allegations of some common contacts" between Greer and SOCi are insufficient to plausibly allege improper use of trade secret information. *See MedQuest Ltd. v. Rosa*, 2023 WL 2575051, at *6-7 (S.D.N.Y. Mar. 20, 2023) (holding that, where plaintiff has an expansive contact list and the former employee defendants are engaged in a competing business, allegations of some common contacts between plaintiff and its former employees fail to state a claim). Further, SOCi's allegations that Greer is using SOCi information to solicit SOCi customers are entirely speculative. *See, e.g.*, FAC ¶ 105 (alleging that Greer is "*most likely* using SOCi's trade secret Pipeline information"). Given this reliance on speculation, innuendo, and conjecture, the Court can "infer

no more than the mere possibility of misconduct from the factual averments" in the FAC. *My Mavens,* 2023 WL 5237519, at \*22-23.

> **b.    The FAC also fails to plausibly plead misappropriation or use by Yext.**

SOCi appears to believe that Yext's mere hiring of employees SOCi has accused (without basis) of misappropriating trade secret information makes Yext itself liable for trade secret misappropriation. But SOCi "cite[s] no case law in support of the proposition that a party can be brought into a trade secret misappropriation case simply by offering employment to an employee who has been disloyal to his or her former employer." *R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 207 (W.D.N.Y. 2020).

As for the allegation that Yext "likely" timed its Listings Recommendation press release based on information shared by the Former SOCi Employees, FAC ¶¶ 96-97, this is disproved by public facts, which show that the timing was in fact based on public information posted by a current SOCi employee, *see supra* at 3-4. SOCi's only other allegation of use by Yext, the supposed April 19 meeting, comes again from the supposed "insider," who is not alleged to have been present and who cannot name the individual from Yext who reportedly shared on screen "SOCi's confidential customer information," FAC ¶ 11—information which is decidedly *not* trade secret in any case, *see supra* at 24; *Aira Jewels* at \*4-6.

In sum, SOCi's allegations of misappropriation offer *at most* circumstantial datapoints that courts consider insufficient to state a plausible claim. *See Ad Lightning*, 2020 WL 4570047, at \*3 (dismissing misappropriation claim where plaintiff "does little more than offer circumstantial datapoints—enough to make its allegations possible, but not plausible").

## IV.    PLAINTIFF'S CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED.

### A.    The intracorporate conspiracy doctrine bars SOCi's civil conspiracy claim.

The intracorporate conspiracy doctrine holds that a "corporation cannot conspire with itself or with its own employees or agents." *See Boneta*, 232 F. Supp. 3d at 359; *Angulo v. Manny*, 2012 WL 569190, at *3 (S.D.N.Y. Feb. 14, 2012) ("The intra-corporate conspiracy doctrine dictates that employees of the same corporate entity who are acting within the scope of their employment are *legally incapable* of conspiring with each other.") Here, the crux of the alleged "conspiracy" is Yext's employment of the Former SOCi Employees and their actions in the course of their employment, *e.g.*, "assisting Yext in unfairly competing," "targeting SOCi's customers and potential customers," FAC ¶ 172. SOCi has not alleged any "conspirators" outside of Yext and its employees. The intracorporate conspiracy doctrine therefore bars SOCi's conspiracy claim. *See Atl. Int'l Movers, LLC v. Ocean World Lines*, Inc., 914 F. Supp. 2d 267, 280 (E.D.N.Y. 2012) (dismissing civil conspiracy claim under the intracorporate conspiracy doctrine where "all of the parties named in the complaint are either corporate affiliates or employees of one another" and the complaint "does not allege that any of these parties acted outside the scope of their employment or corporate affiliation").

### B.    Plaintiff fails to plead an underlying tort of misappropriation as required to sustain a claim of civil conspiracy under New York law.

New York "does not recognize" an independent "tort of civil conspiracy"; such a cause of action is "only tenable where there is evidence of an underlying actionable tort." *Pope v. Rice*, 2005 WL 613085, at *13 (S.D.N.Y. Mar. 14, 2005). SOCi says Yext and the individual defendants have "conspired" to misappropriate SOCi's trade secret information. FAC ¶ 167. But it has not plausibly pleaded misappropriation. It has failed to allege either the existence of any protectable trade secret, *see supra* at 23-26, or any actual use or dissemination of the alleged trade secret information, *see supra* at 26-30. Thus, in addition to being barred by the intracorporate conspiracy doctrine, SOCi's conspiracy claim fails because it has not plausibly pleaded an underlying tort.

*See Hua Xue v. Jensen*, 2020 WL 6825676, at *12 (S.D.N.Y. Nov. 19, 2020) (dismissing civil conspiracy claim because derivative tort claim was not adequately pleaded).

### C.    Plaintiff fails to allege the existence of an underlying agreement among defendants.

Even putting aside the intracorporate conspiracy doctrine, and even if SOCi had pleaded an underlying tort (which it has not), its conspiracy claim would *still* fail because the FAC offers no factual allegations of a "corrupt agreement" between Yext and the individual defendants. *Pope*, 2005 WL 613085, at *13. Other than its "bare conclusory allegation" that the defendants "conspired," SOCi says nothing about any purported underlying agreement between them. *Fierro v. Gallucci*, 2008 WL 2039545, at *16 (E.D.N.Y. May 12, 2008). It has not even identified who allegedly acted on behalf of Yext in furthering the conspiracy, let alone how the conspiracy was carried into action.

As for the Former SOCi Employees, SOCi's only factual allegation is that they "accepted employment with Yext." FAC ¶ 171. However, the mere fact of the individual defendants' common employment at Yext is insufficient to prove an agreement. *See In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 475 (S.D.N.Y. 2019) (refusing to find a conspiracy agreement based solely on defendants' common employment). SOCi has not done enough to survive a motion to dismiss. *See, e.g.*, *Fometal S.R.L. v. Keili Trading LLC*, 2024 WL 307976, at *13 (S.D.N.Y. Jan. 26, 2024) (dismissing civil conspiracy claim where plaintiff offered "no more than vague and conclusory assertions" of defendants' involvement in the purported conspiracy).

### D.    Plaintiff's civil conspiracy claim is duplicative of its tort claims.

Plaintiffs may not "reallege a tort asserted elsewhere in the complaint in the guise of a separate conspiracy claim." *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 2024 WL 379952, at *19 (S.D.N.Y. Feb. 1, 2024).

Here, SOCi's civil conspiracy claim repeats the same allegations underlying its tortious interference and misappropriation claims. *Compare* FAC ¶¶ 166-73 ("Civil Conspiracy" (Yext "intentionally targeted" SOCi's employees and the defendants conspired to misappropriate SOCi's trade secret information)), *with* FAC ¶¶ 113-22 ("Tortious Interference with Contract" (Yext's "intentional inducement" caused the Former SOCi Employees to violate their agreements with SOCi and "share and use" SOCi's trade secret information)) *and* FAC ¶¶ 123-39 ("Trade Secret Misappropriation" (the individual defendants "took trade secret information with them to Yext" and shared and used that information)). This repetition is insufficient to state a distinct claim. *AT&T Corp.*, 2024 WL 379952, at *19 (dismissing civil conspiracy claim because plaintiff "offers no new allegations beyond those alleged in support of [its] other claims"); *Hua Xue v. Jensen*, 2020 WL 6825676, at *12 (same).

## V.    PLAINTIFF ALSO FAILS TO STATE CLAIMS FOR UNFAIR COMPETITION AND UNJUST ENRICHMENT.

### A.    The FAC fails to state a claim for unfair competition because it merely duplicates the trade secret allegation.

It is well established that "[a] claim for unfair competition based on the same allegations as a claim for misappropriation of trade secrets is treated as a single cause of action," and should be "dismissed as duplicative." *Turret Labs USA, Inc. v. CargoSprint, LLC*, 2021 WL 535217, at *6 (E.D.N.Y. Feb. 12, 2021) ("Where . . . a plaintiff's unfair competition claim is premised on the same allegations as the misappropriation claim, it must be dismissed as duplicative."). Here, the FAC recycles the same allegations for both causes of action. *Compare, e.g.*, FAC ¶¶ 154-58 ("Unfair Competition" (Yext engaged in a "scheme to acquire a 'knowledge transfer'" from the Former SOCi Employees and can now use SOCi's trade secrets to unfairly compete)), *with* FAC ¶¶ 123-39 ("Trade Secret Misappropriation" (Yext has improperly acquired trade secrets to get an "unfair head start" and compete with SOCi)).

The FAC's sole non-duplicative allegation—that Yext is unfairly competing by disparaging SOCi—does not move the needle. FAC ¶ 156. To state a claim for unfair competition by disparagement, SOCi must "allege some injurious falsehood intentionally uttered that caused the plaintiff to suffer actual damage." *Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*, 2013 WL 417406, at *17-18 (S.D.N.Y. Feb. 4, 2013). SOCi has not made this showing, not least because, as for damages, it can invoke only the vaguest speculation about potential future customer attrition, *supra* at 23. *See Korova*, 2013 WL 417406, at *18 (finding unfair competition claim insufficiently pleaded where plaintiff failed to "specifically name[]" the lost customers or demonstrate "any quantitative and itemized financial loss").

### B.    SOCi's "catchall" unjust enrichment claim also fails, including because it duplicates its misappropriation and tortious interference allegations.

Unjust enrichment is "available *only* in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). "Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Id.*

Here, the FAC tries to leverage an "unjust enrichment" claim as a sort of duplicative catch-all, even while invoking purported breaches of contract and torts. New York courts look unfavorably on this approach. *See id.* ("[U]njust enrichment is not a catchall cause of action to be used when others fail.").

Moreover, like its unfair competition claim, SOCi's unjust enrichment claim duplicates its misappropriation and tortious interference claims. *Compare* FAC ¶¶ 159-65 ("Unjust Enrichment" (Yext maintained a plot to misappropriate SOCi's trade secrets)), *with* FAC ¶¶ 123-39 ("Trade Secret Misappropriation" (Yext improperly acquired and misappropriated SOCi's trade secret

-34-

information)) *and* FAC ¶¶ 113-22 ("Tortious Interference with Contract" (Yext caused the Former SOCi Employees to "share and use" SOCi's trade secret information to Yext)). As such, the claim must be dismissed because it is merely a backstop, and not an actual, independent claim. *See, e.g.*, *Wedra v. Cree, Inc.*, 2020 WL 1322887, at *11 (S.D.N.Y. Mar. 20, 2020) (dismissing duplicative unjust enrichment claim).

Finally, the unjust enrichment claim also fails because SOCi has not alleged any actual benefit flowing to Yext. The benefit alleged "must be both specific and direct," *RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, 692 F. Supp. 3d 135, 154 (S.D.N.Y. 2023), but SOCi cannot point with any specificity to any trade secrets (or even confidential information) stolen by the Former SOCi Employees and shared with Yext or to any customers who have switched to Yext due to Yext's purported unlawful solicitation tactics, *see supra* at 3, 23. SOCi can allege only potential future benefit, *see, e.g.*, FAC ¶¶ 111-112; *supra* at 23. Because future benefit is "too slender a reed on which to premise a claim of unjust enrichment," *Regnante v. Sec. & Exch. Offs.*, 134 F. Supp. 3d 749, 773 (S.D.N.Y. 2015), the claim must be dismissed. *See BAT LLC v. TD Bank, N.A.*, 2018 WL 4922736, at *13 (E.D.N.Y. July 31, 2018) (failure to plead specific benefit is "fatal" to a claim of unjust enrichment).

At every turn, SOCi's allegations fall short of plausibly alleging enforceable contracts, identified trade secrets, or discrete and viable claims.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss the FAC.


Dated: August 13, 2024                             Respectfully submitted,

                                                   COOLEY LLP

                                                   *s/ Gerard O'Shea*
                                                   Gerard O'Shea
                                                   55 Hudson Yards
                                                   New York, NY 10001
                                                   Telephone: (212) 479-6000
                                                   Facsimile: (212) 479-6275
                                                   goshea@cooley.com

                                                   Joseph D. Lockinger
                                                   1299 Pennsylvania Avenue, N.W.
                                                   Suite 700
                                                   Washington, DC 20004
                                                   Telephone: (202) 842-7800
                                                   Facsimile: (202) 842-7899

                                                   Adam S. Gershenson (*pro hac vice*)
                                                   Cooley LLP
                                                   500 Boylston Street, 14th Floor
                                                   Boston, MA 02116
                                                   Telephone: (617) 937-2300
                                                   Facsimile: (617) 937-2400
                                                   agershenson@cooley.com

                                                   *Attorney for Defendants Yext, Inc., Stuart Greer,*
                                                   *Christopher Brownlee, Jenette Simisky, Megan*
                                                   *Menesale, and Keith Hadelman*