# EXHIBIT H

# SOCI, INC.

Dear Jenette Simisky,

SOCI, Inc., a Delaware corporation (the "Company"), is pleased to offer you employment on the following terms:

1.    **Position.**  Your initial title will be **Senior Director of Product Management** and you will initially report to the Company's Vice President of Product, Cynthia Castro. This is a full-time position. While you render services to the Company, you will not engage in any other competing employment, consulting or other business activity (whether full-time or part-time) that would create a conflict of interest with the Company. By signing this letter agreement, you confirm to the Company that you have no contractual commitments or other legal obligations that would prohibit you from performing your duties for the Company.

2.    **Cash Compensation.**  The Company will pay you a starting salary at the rate of $200,000.00 per year, payable in accordance with the company's payroll schedule. In addition, you will be eligible for an incentive bonus of up to $15,000.00 for each complete fiscal year you are employed at the Company, but only if you are still employed by the Company at the time of payment. The variable compensation (if any) will be awarded each fiscal quarter, in the proportions and based on variable objectives determined by the Vice President of Product. Any variable compensation for the fiscal quarter in which your employment begins will be prorated, based on the number of days you are employed by the Company during that quarter. Any variable compensation for a fiscal quarter will be paid within 1½ months after the close of that quarter, but only if you are still employed by the Company at the time of payment. The determinations of the Vice President of Product with respect to your variable compensation will be final and binding.

3.    **Employee Benefits.** As a regular employee of the Company, you will be eligible to participate in any Company-sponsored benefits the first of the next month following your first day of employment. In addition, Full-Time Employees will be entitled to paid vacation and sick days in accordance with the Company's Flexible Paid Time Off ("FPTO") policy after completing 30 days of service with SOCi.

4.    **Stock Options.** Subject to the approval of the Company's Board of Directors or its Compensation Committee, you will be granted an option to purchase 55,000 shares of the Company's Common Stock (the "Option"). The exercise price per share of the Option will be determined by the Board of Directors or the Compensation Committee. The Option will be subject to the terms and conditions applicable to options granted under the Company's 2021 Stock Plan (the "Plan"), as described in the Plan and the applicable Stock Option Agreement. You will vest in 25% of the Option shares after 12 months of continuous service, and the balance will vest in equal monthly installments over the next 36 months of continuous service, as described in the applicable Stock Option Agreement.

5.    **Proprietary Information and Inventions Agreement.** Like all Company employees, you will be required, as a condition of your employment with the Company, to sign the

Company's standard Proprietary Information and Inventions Agreement, a copy of which is attached hereto as Exhibit A.

6.　**Employment Relationship.** Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company may terminate your employment at any time and for any reason, with or without cause. Any contrary representations that may have been made to you are superseded by this letter agreement. This is the full and complete agreement between you and the Company on this term. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures, may change from time to time, the "at will" nature of your employment may only be changed in an express written agreement signed by you and a duly authorized officer of the Company (other than you).

7.　**Tax Matters.**

(a)　**Withholding**. All forms of compensation referred to in this letter agreement are subject to reduction to reflect applicable withholding and payroll taxes and other deductions required by law.

(b)　**Tax Advice**. You are encouraged to obtain your own tax advice regarding your compensation from the Company. You agree that the Company does not have a duty to design its compensation policies in a manner that minimizes your tax liabilities, and you will not make any claim against the Company or its Board of Directors related to tax liabilities arising from your compensation.

8.　**Interpretation, Amendment and Enforcement.** This letter agreement and Exhibit A constitute the complete agreement between you and the Company, contain all of the terms of your employment with the Company and supersede any prior agreements, representations or understandings (whether written, oral or implied) between you and the Company. This letter agreement may not be amended or modified, except by an express written agreement signed by both you and a duly authorized officer of the Company. The terms of this letter agreement and the resolution of any disputes as to the meaning, effect, performance or validity of this letter agreement or arising out of, related to, or in any way connected with, this letter agreement, your employment with the Company or any other relationship between you and the Company (the "Disputes") will be governed by the laws of the state in which you primarily work for the Company, excluding laws relating to conflicts or choice of law.

* * * * *

Background Check. This offer is also contingent upon successful completion of a background check, including a check of your employment references. This offer can be rescinded based upon data received in the background check.

We hope that you will accept our offer to join the Company. You may indicate your agreement with these terms and accept this offer by signing and dating both the enclosed duplicate original of this letter agreement and the enclosed Proprietary Information and Inventions Agreement and returning them to me.  This offer, if not accepted, will expire at the close of business on November 10, 2022. As required by law, your employment with the Company is contingent upon your providing legal proof of your identity and authorization to work in the United States. Your employment is also contingent upon your starting work with the Company on or before ~~November 28, 2022.~~ December 5, 2022.

If you have any questions, please feel free to contact me.

Very truly yours,

SOCI, INC.

By: _Andrew Dolled_
Andrew Dolled, Vice President of HR

I have read and accept this employment offer:

_Jenette Simisky_
Signature of Employee

Dated: 11/9/2022 | 7:24 AM PST

**Attachment**

Exhibit A:  Proprietary Information and Inventions Agreement

A few days before you start, our IT partner Interlaced will be shipping your laptop to the address you provide below. You will be sent a MacBook (unless you request a PC, or are a member of our Finance team and will be sent a PC automatically). We cannot ship to P.O. Boxes. We also want to make sure that you have a monitor, mouse, and keyboard as these items will help you do your best work. Please indicate whether you need these items below, and Interlaced will have them sent to you.

Legal name (first and last):

Jenette Simisky

First and last name as you would like it to appear on SOCi email:

Jenette

Personal email address:

jenettesimisky@gmail.com

Phone number:

508-736-8414

Our standard equipment is a Macbook, so please check here if you would prefer a PC

Please indicate if you need the following by checking the boxes next to the item(s) you need

    Monitor                Mouse          X Keyboard           Hub Adapter/Dock

Address 1

20 Child Street

Address 2

302

City

Cambridge

State

MA

Zip

02141

Is there anything else we need to know?



DocuSigned by:

77B09C5C20DD457...

Jenette Simisky      11/9/2022 | 7:24 AM PST

# SOCi, INC.
# EMPLOYEE INVENTIONS AND PROPRIETARY INFORMATION AGREEMENT

The following agreement (the "Agreement") between SOCi, Inc., a Delaware corporation (the "Company"), and the individual identified on the signature page to this Agreement ("Employee" or "I") is effective as of the first day of Employee's employment by the Company and confirms and memorializes the agreement that (regardless of the execution date hereof) the Company and I have had since the commencement of my employment (which term, for purposes of this Agreement, shall be deemed to include any relationship of service to the Company that I may have had prior to actually becoming an employee). I acknowledge that this Agreement is a material part of the consideration for my employment or continued employment by the Company. In exchange for the foregoing and for other good and valuable consideration, including my access to and use of the Company's Inventions (defined below) and Proprietary Information (defined below) for performance of my employment, training and/or receipt of certain other valuable consideration, the parties agree as follows:

1.    **No Conflicts.** I have not made, and agree not to make, any agreement, oral or written, that is in conflict with this Agreement or my employment with the Company. I will not violate any agreement with, or the rights of, any third party. When acting within the scope of my employment (or otherwise on behalf of the Company), I will not use or disclose my own or any third party's confidential information or intellectual property (collectively, "Restricted Materials"), except as expressly authorized by the Company in writing. Further, I have not retained anything containing or reflecting any confidential information or intellectual property of a prior employer or other third party, whether or not created by me.

2.    **Inventions.**

a.    **Definitions.** "Company Interest" means any of the Company's current and anticipated business, research and development, as well as any product, service, other Invention or Intellectual Property Rights (defined below) that is sold, leased, used, licensed, provided, proposed, under consideration or under development by the Company. "Intellectual Property Rights" means any and all patent rights, copyright rights, trademark rights, mask work rights, trade secret rights, *sui generis* database rights and all other intellectual and industrial property rights of any sort throughout the world (including any application therefor and any rights to apply therefor, as well as all rights to pursue remedies for infringement or violation thereof). "Invention" means any idea, concept, discovery, learning, invention, development, research, technology, work of authorship, trade secret, software, firmware, content, audio-visual material, tool, process, technique, know-how, data, plan, device, apparatus, specification, design, prototype, circuit, layout, mask work, algorithm, program, code, documentation or other material or information, tangible or intangible, and all versions, modifications, enhancements and derivative works thereof, whether or not it may be patented, copyrighted, trademarked or otherwise protected.

b.    **Assignment.** The Company shall own, and I hereby assign and agree to assign, all right, title and interest in and to all Inventions (including all Intellectual Property Rights therein, related thereto or embodied therein) that are collected, made, conceived, developed, reduced to practice or set out in any tangible medium of expression or otherwise created, in whole or in part (collectively, "Created"), by me during the term of my employment with the Company that either (i) arise out of any use of the Company's facilities, equipment, Proprietary Information or other assets (collectively, "Company Assets") or any research or other activity conducted by, for or under the direction of the Company (whether or not conducted (A) at the Company's facilities; (B) during working hours or (C) using Company Assets), or (ii) are useful with or in or relate directly or indirectly to any Company Interest. I will promptly disclose and provide all of the foregoing Inventions (the "Assigned Inventions") to the Company. However, the foregoing does not purport to assign to the Company (and Assigned Inventions shall not include) any Invention that: (1) by law (including, without limitation, the applicable statutory provision for my state of employment set forth in Appendix A, if any) I cannot be required to so assign; or (2) otherwise meets all of the following requirements: (I) the Invention is Created entirely on my own time; (II) the Invention is Created entirely without use of any Company Assets and (III) the Invention is not useful with or related to any Company Interest. Nevertheless, if I believe any Invention Created by me during the term of my employment is not within the definition of Assigned Inventions, I will nevertheless disclose it to the Company so that the Company may make its assessment.

c.    **Assurances.** I hereby make and agree to make all assignments to the Company necessary to effectuate and accomplish the Company's ownership in and to all Assigned Inventions. I will further assist the Company, at its expense, to evidence, record and perfect such assignments, and to perfect, obtain, maintain, enforce and defend any rights specified to be so owned or assigned. I hereby irrevocably designate and appoint the Company and its officers as my agents and attorneys-in-fact, coupled with an interest, to act for and on my behalf to execute and file any document and to perform all other lawfully permitted acts to further the purposes of the foregoing with the same legal force and effect as if executed by me.

d.    **Other Inventions.** If (i) I use or disclose any Restricted Materials when acting within the scope of my employment (or otherwise to or on behalf of the Company) or (ii) any Assigned Invention cannot be fully made, used, reproduced, sold, distributed, modified, commercialized or otherwise exploited (collectively, "Exploited") without using, misappropriating, infringing or violating any Restricted Materials, I hereby grant and agree to grant to the Company a perpetual, irrevocable, worldwide, fully paid-up, royalty-free, non-exclusive, assignable, transferable, sublicensable right and license to use, disclose, fully Exploit and exercise all rights in such Restricted Materials and all Intellectual Property Rights embodied therein or related thereto. I will not use or disclose any Restricted Materials for which I am not fully authorized to grant the foregoing license.

e.    **Moral Rights.** To the extent allowed by applicable law, the terms of this Section 2 include all rights of paternity, integrity,

1

disclosure, withdrawal and other rights that may be known or referred to as moral rights, artist's rights, droit moral or the like (collectively, "Moral Rights"). To the extent I retain any such Moral Rights under applicable law, I hereby ratify and consent to any action that may be taken with respect to such Moral Rights by or authorized by the Company, and agree not to assert any Moral Rights with respect thereto. I will confirm any such ratification, consent or agreement from time to time as requested by the Company. Furthermore, I agree that notwithstanding any rights of publicity, privacy or otherwise (whether or not statutory) anywhere in the world and without any further compensation, the Company may and is hereby authorized to use my name, likeness and voice in connection with promotion of its business, products and services, and to allow others to do the same.

3.    **Proprietary Information.**

a.    **Definition; Restrictions on Use.** I agree that all Assigned Inventions (and all other financial, business, legal and technical information regarding or relevant to any Company Interest that is not generally publicly known), including the identity of and any other information relating to the Company's employees, Affiliates and Business Partners (as such terms are defined below), that I develop, learn or obtain during my employment or that are received by or for the Company in confidence, constitute "Proprietary Information." I will hold in strict confidence and not directly or indirectly disclose or use any Proprietary Information, except as required within the scope of my employment. My obligation of nondisclosure and nonuse of Proprietary Information under this Section shall continue until I can document that it is or becomes readily generally available to the public without restriction through no fault of mine (understanding that breach of this Agreement would be such a fault) or, if a court requires a shorter duration, then the maximum time allowable by law will control. Furthermore, I understand that this Agreement does not affect my immunity under 18 USC Sections 1833(b) (1) or (2), which read as follows:

(1)  An individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(2)  An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order.

b.    **Upon Termination.** Upon termination of my employment (for any or no reason, whether voluntary or involuntary), I will promptly identify and, as directed by the Company, destroy, delete or return to the Company all items containing or embodying Proprietary Information (including all original or copies of content, whether in electronic or hard-copy form), except that I may keep my personal copies of (i) my

compensation records; (ii) materials distributed to shareholders generally and (iii) this Agreement.

c.    **Company Systems.** I also recognize and agree that I have no expectation of privacy with respect to the Company's networks, telecommunications systems or information processing systems (including, without limitation, stored computer files, email messages and voicemail messages or other devices (including personal devices)) in which Company Proprietary Information resides, is stored or is passed through (collectively, "Company Systems"), and in order to ensure compliance with work rules and safety concerns, the Company or its agents may monitor, at any time and without further notice to me, any Company Systems and any of my activity, files or messages on or using any Company Systems, regardless of whether such activity occurs on equipment owned by me or the Company. I further agree that any property situated on the Company's premises and owned, leased or otherwise possessed by the Company, including computers, computer files, email, voicemail, storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice. I understand and acknowledge that (A) any such searches or monitoring efforts are not formal accusations of wrongdoing but rather part of the procedure of an investigation and (B) refusal to consent to such a search may be grounds for discipline.

4.    **Restricted Activities.** For the purposes of this Section 4, the term "the Company" includes the Company and all other persons or entities that control, are controlled by or are under common control with the Company ("Affiliates") and for whom Employee performed responsibilities or about whom Employee has Proprietary Information.

a.    **Definitions.** "Competitive Activities" means any direct or indirect non-Company activity (i) that is the same or substantially similar to Employee's responsibilities for the Company that relates to, is substantially similar to, or competes with the Company (or its demonstrably planned interests) at the time of Employee's termination from the Company; or (ii) involving the use or disclosure, or the likelihood of the use or disclosure, of Proprietary Information. Competitive Activities do not include being a holder of less than one percent (1%) of the outstanding equity of a public company. "Business Partner" means any past (*i.e.*, within the twelve (12) months preceding Employee's termination from the Company), present or prospective (*i.e.*, actively pursued by the Company within the twelve (12) months preceding Employee's termination from the Company) customer, vendor, supplier, distributor or other business partner of the Company with whom Employee comes into contact during Employee's employment with the Company or about whom Employee had knowledge by reason of Employee's relationship with the Company or because of Employee's access to Proprietary Information. "Cause" means to recruit, employ, retain or otherwise solicit, induce or influence, or to attempt to do so (provided that if I am a resident of California, "Cause" means to recruit, or otherwise solicit, induce or influence, or to attempt to do so). "Solicit", with respect to Business Partners, means to (A) service, take orders from or solicit the business or patronage of any Business Partner for Employee or any other person or entity, (B) divert, entice or otherwise take away from the Company the business or patronage of any Business Partner, or to

2

attempt to do so, or (C) solicit, induce or encourage any Business Partner to terminate or reduce its relationship with the Company.

b.    **Acknowledgments.**

i.    I acknowledge and agree that (A) the Company's business is highly competitive; (B) secrecy of the Proprietary Information is of the utmost importance to the Company, and I will learn and use Proprietary Information in the course of performing my work for the Company and (C) my position may require me to establish goodwill with Business Partners and employees on behalf of the Company and such goodwill is extremely important to the Company's success, and the Company has made substantial investments to develop its business interests and goodwill.

ii.    I agree that the limitations as to time, geographical area and scope of activity to be restrained in this Section 4 are coextensive with the Company's footprint and my performance of responsibilities for the Company and are therefore reasonable and not greater than necessary to protect the goodwill or other business interests of the Company.  I further agree that such investments are worthy of protection and that the Company's need for protection afforded by this Section 4 is greater than any hardship I may experience by complying with its terms.

iii.    I acknowledge that my violation or attempted violation of the agreements in this Section 4 will cause irreparable damage to the Company or its Affiliates, and I therefore agree that the Company shall be entitled as a matter of right to an injunction out of any court of competent jurisdiction, restraining any violation or further violation of such agreements by me or others acting on my behalf.  The Company's right to injunctive relief shall be cumulative and in addition to any other remedies provided by law or equity.

iv.    Although the parties believe that the limitations as to time, geographical area and scope of activity contained herein are reasonable and do not impose a greater restraint than necessary to protect the goodwill or other business interests of the Company, if it is judicially determined otherwise, the limitations shall be reformed to the extent necessary to make them reasonable and not to impose a restraint that is greater than necessary to protect the goodwill or other business interests of the Company.

v.    In any such case, the Company and I agree that the remaining provisions of this Section 4 shall be valid and binding as though any invalid or unenforceable provision had not been included.

c.    **As an Employee.** During my employment with the Company, I will not directly or indirectly: (i) Cause any person to cease or reduce their services (as an employee or otherwise) to the Company (other than terminating subordinate employees in the course of my duties for the Company); (ii) Solicit any Business Partner; (iii) act in any capacity in or with respect to any commercial activity which competes, or is reasonably likely to compete, with any business that the Company conducts, proposes to conduct or demonstrably anticipates conducting, at any time during my employment with the Company or (iv) enter into in an employment, consulting or other similar relationship with another person or entity that requires a significant time commitment without the prior written consent of the Company.

d.    **After Termination.** For the period of twelve (12) months immediately following my termination of employment with the Company (for any or no reason, whether voluntary or involuntary), I will not directly or indirectly: (i) Cause any person to cease or reduce their services (as an employee or otherwise) to the Company; or (ii) unless I am a resident of California (A) Solicit any Business Partner or (B) engage in any Competitive Activities (I) anywhere the Company offers its services or has customers during my employment with the Company or where my use or disclosure of Proprietary Information could materially disadvantage the Company regardless of my physical location; or (II) anywhere the Company offers its services or has customers and where I have responsibility for the Company or (III) anywhere within a fifty (50) mile radius of any physical location I work for the Company.  The foregoing timeframes shall be increased by the period of time beginning from the commencement of any violation of the foregoing provisions until such time as I have cured such violation.

5.    **Employment at Will.** I agree that this Agreement is not an employment contract for any particular term.  I have the right to resign and the Company has the right to terminate my employment at will, at any time, for any or no reason, with or without cause.  This Agreement does not purport to set forth all of the terms and conditions of my employment, and as an employee of the Company, I have obligations to the Company which are not described in this Agreement.  However, the terms of this Agreement govern over any such terms that are inconsistent with this Agreement, and supersede the terms of any similar form that I may have previously signed.  This Agreement can only be changed by a subsequent written agreement signed by the Chief Executive Officer or President of the Company, or an officer designee authorized in writing by the foregoing or the Company's Board of Directors.

6.    **Survival.** I agree that any change or changes in my employment title, duties, compensation, or equity interest after the signing of this Agreement shall not affect the validity or scope of this Agreement.  I agree that the terms of this Agreement, and any obligations I have hereunder, shall continue in effect after termination of my employment, regardless of the reason, and whether such termination is voluntary or involuntary, and that the Company is entitled to communicate my obligations under this Agreement to any of my potential or future employers.  I will provide a copy of this Agreement to any potential or future employers of mine, so that they are aware of my obligations hereunder.   This Agreement, and any obligations I have hereunder, also shall be binding upon my heirs, executors, assigns and administrators, and shall inure to the benefit of the Company, its Affiliates, successors and assigns. This Agreement and any rights and obligations of the Company hereunder may be freely assigned and transferred by the Company, in whole or part, to any third party.

7.    **Miscellaneous.** Any dispute in the meaning, effect or validity of this Agreement shall be resolved in accordance with the laws of the State of Delaware (provided that if I am a resident of California, any disputes shall be resolved in accordance with the laws of the State of California), without regard to the conflict of laws provisions thereof.   Any legal action or proceeding relating to this Agreement shall be brought exclusively in the state or federal courts located in or with jurisdiction over San Diego

County, California, and each party consents to the jurisdiction thereof; however, the Company may seek injunctive relief and specific performance in any court of competent jurisdiction. The failure of either party to enforce its rights under this Agreement at any time for any period shall not be construed as a waiver of such rights. Unless expressly provided otherwise, each right and remedy in this Agreement is in addition to any other right or remedy, at law or in equity, and the exercise of one right or remedy will not be deemed a waiver of any other right or remedy. If one or more provisions of this Agreement is held to be illegal or unenforceable under applicable law, such illegal or unenforceable portion shall be limited or excluded from this Agreement to the minimum extent required so that this Agreement shall otherwise remain in full force and effect and enforceable. I acknowledge and agree that any breach or threatened breach of this Agreement will cause irreparable harm to the Company for which damages would not be an adequate remedy, and, therefore, the Company is entitled to injunctive relief with respect thereto (without the necessity of posting any bond) in addition to any other remedies.

*-- Signature Page Follows --*

**I HAVE READ THIS AGREEMENT CAREFULLY AND I UNDERSTAND AND ACCEPT THE OBLIGATIONS THAT IT IMPOSES UPON ME WITHOUT RESERVATION.  NO PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME TO INDUCE ME TO SIGN THIS AGREEMENT.  I SIGN THIS AGREEMENT VOLUNTARILY AND FREELY, WITH THE UNDERSTANDING THAT I EITHER (1) HAVE RETAINED A COPY OF THIS AGREEMENT OR (2) MAY REQUEST A COPY OF THIS AGREEMENT FROM THE COMPANY AT ANY TIME.**

**SOCI, INC.**

By: *Andrew Dolled*
123C6B5C423F419

Name: Andrew Dolled

Title: Vice President of Human Resources

Dated: 11/8/2022 | 10:00 AM PST

**EMPLOYEE**

By: *Jenette Simisky*
77B09C5C20DD457

Name: Jenette Simisky

Address: 20 Child Street #302
Cambridge, MA 02141

Dated: 11/9/2022 | 7:24 AM PST