# GLENN AGRE BERGMAN & FUENTES ➤

Reid Skibell
rskibell@glennagre.com

1185 Avenue of the Americas, 22nd Floor
New York, NY 10036
212.970.1610

December 17, 2024

**VIA ECF**
Honorable Ona T. Wang
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *SOCi, Inc. v. Yext, Inc., et al.*, No. 1:24-cv-04530-RA-OW

Dear Judge Wang,

      We represent SOCi, Inc. ("SOCi") in the above-referenced case. Defendants have informed us they intend to file a Rule 11 motion even though such an application would only be ripe *after the close of fact discovery*. *Laba v. JBO Worldwide Supply Pty Ltd.*, 2021 WL 2739228, at *5 (S.D.N.Y. Jul. 1, 2021) ("In the Second Circuit, courts have only granted sanctions motions based on a plaintiff's fraudulent allegations *after* the end of discovery and/or summary judgment practice.") (emphasis in original).[1] The reason for that is a Rule 11 motion involves serious allegations that require a complete factual record to decide.[2] Moreover, during the parties' December 17, 2024 meet and confer, Defendants confirmed that (1) they intend to move for a stay of discovery until the Court decides their sanctions motion, and (2) they will not produce interview memos that contain facts (not privileged information), even though they have put these memos at issue in this litigation, thereby waiving any arguable claim to privilege. By contrast, SOCi's counsel has offered to produce its witness interview memos, with very minor redactions for genuine attorney-work product; we have nothing to hide.

      Neither position advanced by Defendants is justified. As set forth in the cases cited above, a sanctions motion related to the allegations in a pleading is premature prior to the close of discovery. At a minimum, discovery in this action should commence and Defendants should be required to produce, on an expedited basis, documents concerning the critical issue of whether SOCi's confidential information was disclosed, including the aforementioned witness memos.

      **Background on the baseless Rule 11 motion**. The First Amended Complaint ("FAC") alleges that Yext, Inc. ("Yext") schemed to steal SOCi's confidential and trade secret

---

[1] *See also EXP Corp. v. Ohana*, 2024 WL 4827769, at *1 (E.D.N.Y. Nov. 18, 2024) ("In line with this Circuit's practice, the Court will not impose sanctions while discovery continues."); *Luv N' Care, Ltd. v. Shiboleth LLP*, 2017 WL 3671039, at *13 (S.D.N.Y. Aug. 8, 2017) ("[T]he prevailing approach of courts faced with this situation, where a defendant files a sanctions motion at the outset of a case on the ground that the plaintiff's allegations are false, is to deny the motion without prejudice to renewal after discovery.").

[2] See *Brikman v. Hecht*, 2021 WL 3741538, at *3 (E.D.N.Y. Aug. 24, 2021) (declining to award sanctions because discovery was not complete).

**Glenn Agre Bergman & Fuentes LLP**
New York
San Francisco
glennagre.com

# GLENN AGRE BERGMAN & FUENTES ▶

information by hiring nine employees while laying off a large percentage of its own workforce. As *one example* of that scheme, the FAC alleges that "on or about April 19" of this year, Yext held an internal sales meeting, attended by former SOCi employees Stuart Greer and Keith Hadelman, where Greer and Hadelman shared details of SOCi's confidential customer information (the "New York Meeting"). Falk Gottlob, who was then SOCi's Chief Product Officer, learned about the New York Meeting from the "Yext Insider," Tzi-Kei Wong, who shared certain details of the meeting with him.

Gottlob has no incentive to lie, and he has submitted two declarations under penalty of perjury attesting to his correspondence with Wong. *See* Exs. 1-2. Contemporaneous text messages also corroborate Gottlob's sworn statements.

For example, in an April 20, 2024 text message, SOCi's CEO, Afif Khoury, wrote to Gottlob: "How are you that [Wong] said it was Stu [Greer] in that meeting with executives? And did she say what documents he had?" Gottlob responded: "She said it was [Greer] and he had customer lists, list of customers with issues, contract[s] and other things." *See* Ex. 3. Khoury then texted Gottlob snapshots of Hadelman and Greer, and asked "Please ask her which of these guys." After conferring with Wong, Gottlob responded: "Both were there, she didn't know whose material it was," and "[t]hey had material. She doesn't know whose material it was. They were presenting on screen and talking about customers. She was pulled into the meeting because they had product questions and was only there for 20 min[utes]." *Id.*

And on June 5, Khoury sent a list of individuals a text stating that he spoke with Gottlob and the latter "ha[d] a conversation with Yext's head of product this morning" and "[t]here is a very bad thing happening over there led by Chris Brownlee and [Greer] . . . ." *See* Ex. 4. There are subsequent texts in the chain confirming this information. Simply put, it defies credulity that two SOCi employees would have detailed, contemporaneous discussions about the New York Meeting, had Gottlob not learned about the meeting from Wong.

Although Gottlob recalls using WhatsApp to communicate with Wong, he is unable to locate the communications and believes he may have inadvertently deleted the text message chain.[3] Defendants will no doubt attempt to attach some purportedly nefarious purpose to Gottlob's inability to locate the WhatsApp chain. However, their own forensic examiner has already determined that Wong—a Yext employee at all relevant times—deleted logs showing phone calls with Gottlob. Her apparently purposeful deletion of the call logs further lends credibility to Gottlob's version of events.

Given Gottlob's testimony, the primary basis for Defendants' motion appears to be a factual investigation, including witness interviews, which supposedly uncovered no evidence that

---

[3] It is clear that Gottlob used WhatsApp to communicate with Wong because there is a chain between them that was initiated on June 12, 2024. According to Robert Beegle, a recognized expert in cellular communications who examined Gottlob's phone, there could have been an earlier WhatsApp chain between the parties that was deleted. Such a chain could not be recovered using publicly available tools.

**GLENN AGRE BERGMAN & FUENTES**

a meeting matching the description of the New York Meeting was held. *See* Ex. 5 (draft declaration sent to SOCi's counsel stating these interviews occurred).

**The Requested Discovery**. SOCi is requesting expedited discovery into three categories of documents, which would tend to disprove the allegations of Defendants' Rule 11 motion and corroborate Gottlob's testimony regarding the Yext Insider. On a December 17, 2024 meet and confer, counsel for SOCi asked counsel for Yext if they would voluntarily produce this information before SOCi's response to Yext's Rule 11 motion is due, but Yext refused.

*First*, SOCi seeks the production of the witness interview memos and related documents that Yext's counsel has already collected. Because these memos contain facts, they are not privileged.[4] Even if they were, Defendants waived any ostensible privilege by putting the interview memos at issue and using their purported contents to Defendants' benefit in their Rule 11 motion while holding them out of SOCi's reach. "[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 40 (E.D.N.Y. 2013), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014); *see also, e.g.*, *U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991) ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.").

*Second*, SOCi seeks the production of documents and communications between April 1 and June 12, 2024 concerning SOCi's confidential and trade secret information and the disclosure and/or discussion of same between or among Yext and any former SOCi employee, including any virtual or in-person Yext meeting concerning such information. *See* October 23, 2024 Requests for Production to Yext, Ex. 6, Nos. 2, 4-9, 14, 17-18, 21, 23. These documents will establish, among other things, whether and when the New York Meeting took place.

*Third*, SOCi seeks the production of Yext's communications with Wong after June 5, 2024. Wong was no longer employed by Yext for most of that period, and, therefore, the communications should be neither privileged nor substantial in quantity. Further, these communications would tend to show whether Yext reminded Wong of any confidentiality obligations to it or made any other enticements that would tend to encourage her to walk back or deny her conversations with Gottlob. *See* RFP Nos. 15-17.

Finally, SOCi respectfully reiterates its request that the Court direct the parties to proceed with document and interrogatory discovery pending the adjudication of Defendants' motion to dismiss. This case was originally filed in June, and it is no closer to resolution, and never will be, unless the case is permitted to proceed in the normal course.

Thank you for your attention to this matter.

---

[4] *Jackson v. Nassau Cnty.*, 340 F.R.D. 539, 546 (E.D.N.Y. 2022) ("documents devoid of legal analysis, including notes of factual interviews which are summaries. . . fall outside of any work product doctrine"); *Rivera v. Thurston Foods, Inc.*, 2012 WL 603297, at *2 (D. Conn. Feb. 24, 2012) (facts conveyed to an attorney are not privileged).

# GLENN AGRE BERGMAN & FUENTES

Respectfully submitted,

*/s/ Lindsey (Reid) Skibell*
Reid Skibell
Glenn Agre Bergman & Fuentes
1185 Avenue of the Americas, 22nd Flr.
New York, NY 10036

*Counsel for Plaintiff SOCi, Inc.*