```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   SOCi, INC.,

 4                    Plaintiff,

 5            v.                          24 CV 4530 (RA)(OTW)

 6   YEXT, INC., et al.,

 7                    Defendants.         Conference
     ------------------------------x
 8                                        New York, N.Y.
                                          December 18, 2024
 9                                        11:40 a.m.

10   Before:

11                        HON. ONA T. WANG,

12                                        U.S. Magistrate Judge

13                        APPEARANCES

14   GLENN AGRE BERGMAN & FUENTES LLP
          Attorneys for Plaintiff
15   BY:  REID SKIBELL
          MEGAN M. REILLY
16
     FORD O'BRIEN LANDY LLP
17        Attorneys for Non Party Falk Gottlob
     BY:  AMY C. BROWN
18
     COOLEY LLP
19        Attorneys for Defendants
     BY:  JOSEPH LOCKINGER
20        DANIEL BERNARD

21

22

23

24

25
```

1                (Case called)

2                MR. SKIBELL:  Reid Skibell of Glenn Agre Bergman for

3     the plaintiff, SOCi.

4                MS. REILLY:  Megan Reilly of Glenn Agre Bergman &

5     Fuentes for plaintiff, SOCi.

6                MS. BROWN:  Amy Brown, Ford O'Brien Landy, for

7     nonparty Falk Gottlob.

8                MR. LOCKINGER:  Joseph Lockinger from Cooley on behalf

9     of the defendants.  I'm joined by my colleague, Daniel Bernard,

10    also from Cooley, on behalf of defendants.

11               THE COURT:  Good afternoon.

12               Ms. Brown, you are new, and you are Mr. Gottlob's

13    separate attorney.

14               MS. BROWN:  Yes, your Honor.

15               THE COURT:  I reviewed the parties' letters.  It seems

16    like the issue we have to deal with today, and it may go very

17    quickly, is whether we are facing Rule 11 and Rule 37(e)

18    motions and what, if anything, we should do in advance of doing

19    that.

20               I am going to tell you that all other discovery is

21    going to be stayed.  What I am considering, however, is whether

22    a certain targeted discovery, such as a deposition of

23    Mr. Gottlob, might be appropriate, useful, or helpful, before

24    we engage in this serious motion practice with serious

25    allegations.

1          Anybody have any view, or have you discussed any of

2     this?

3          I'll leave it open to the plaintiffs first.

4          MR. SKIBELL:  Your Honor, I'll start in this way.

5          The law we provided to you is very clear.  These are

6     serious allegations.  They are attacking the reputation and

7     credibility of our firm, my client, and they are basically

8     accusing Mr. Gottlob of a federal crime.

9          The way that's dealt with in the Second Circuit is

10    that this type of motion is only ripe after the close of fact

11    discovery, which is consistent with the seriousness of the

12    allegations, because you shouldn't be able to have a truncated

13    record that would be targeting one particular issue that one

14    side might like and make these types of allegations.

15         So we believe that, at minimum, there should be

16    widespread discovery prior to any determination on any sort of

17    motion, and we believe it's inappropriate, under the case law

18    we provide you, which they have provided no contrary case law,

19    to stay discovery for the pendency of the sanctions motion.

20    Literally, this will be the first case that I have seen that

21    would have come out in that direction.

22         We think that's particularly true here because we

23    provide your Honor with contemporaneous written communications

24    between Mr. Gottlob and others where you can see with your own

25    eyes what he is reporting and people's reaction to that.

```
 1              It would be incredible, like shocked the conscience of
 2      these people who have supposedly engaged in some sort of like
 3      cost plight for the purposes of this.  It's clear everyone here
 4      believes, when you look at those.  That's what we assume
 5      defendants are saying.  It's clear to us that everyone on those
 6      communications believed Mr. Gottlob was telling the truth and
 7      what happened, and we can take that with his sworn declaration.
 8      That should be more than enough here to defeat, in our view, in
 9      and of itself, the Rule 11 motion.  This is not something
10      people made up at the time, and that is consistent with the
11      evidence.
12              If your Honor is going to proceed as your Honor has
13      indicated, we believe that, at a minimum, the three categories
14      of documents that are appropriate that should be produced here
15      before any determination can possibly be made on a Rule 11
16      motion, those three things are as follows:  One are
17      fact-witness interviews and other corroborating materials.  We
18      provide you a draft declaration from Gerard O'Shea, who says
19      that Cooley did a fact investigation, and their bases for their
20      conclusion that Mr. Gottlob is a liar is these fact
21      investigations.
22              We have also provided you the case law that facts,
23      like fact-witness interviews, are not privileged.  They are not
24      covered by a work-product protection.  And that's particularly
25      true when you put them at issue.  When you say in this case
```

1  essentially that Mr. Gottlob is not telling the truth and you

2  rely on, among other things, this investigation that you did,

3  you have waived any claim to privilege.

4          THE COURT:  Why don't you just depose Mr. Gottlob?

5          MR. SKIBELL:  About what?

6          THE COURT:  Whether the communications happened and

7  when they happened and what was said.

8          MR. SKIBELL:  Mr. Gottlob has provided two

9  declarations --

10         THE COURT:  Why don't you just depose Mr. Gottlob.

11         MR. SKIBELL:  We don't --

12         THE COURT:  Are you objecting to deposing Mr. Gottlob?

13         MR. SKIBELL:  We ourselves have no objection if

14  defendants want to depose Mr. Gottlob, but it needs to be a

15  complete record.  This is not a witch hunt for Mr. Gottlob.

16         THE COURT:  No, it's not.  I agree.

17         Maybe what you can do is you can depose -- we got

18  Ms. Wong's deposition and Mr. Gottlob's deposition.

19         MR. SKIBELL:  Your Honor, that would be inappropriate,

20  in our view.

21         THE COURT:  Why is it inappropriate?  Does it violate

22  the law?  Is it something that I do not have the discretion to

23  order?  Am I doing something illegal?

24         MR. SKIBELL:  Of course we are not saying you're doing

25  illegal, your Honor.  We are saying that the law says, when you

1    have this type of motion, you should have broad discovery.

2         THE COURT:  You mean the case that says I can't just

3    cut through this and say, when the issue is whether certain

4    communications and conversations occurred, not what people

5    interpreted later, but when certain communications occurred or

6    didn't occur, that I can't just cut to the chase and say, let's

7    depose the people who are purportedly in those conversations.

8         MR. SKIBELL:  Your Honor, to be clear, what is at

9    issue here is Mr. Gottlob's secondhand statements about, this

10   is what took place.  Some other person told me, this is what

11   was happening inside at X.  So, among other things, what would

12   corroborate Mr. Gottlob's --

13        THE COURT:  Pause.  So maybe I don't understand the

14   facts.  Mr. Gottlob had a conversation with Ms. Wong, and that

15   is what he reported to be the basis of the allegations in the

16   complaint, right?

17        MR. LOCKINGER:  It's a written communication.  No

18   conversation.

19        THE COURT:  What does the complaint say?  Because I

20   have read the complaint at the last conference and it seemed

21   like it was very clear that there were certain communications

22   alleged, and it was very clear what type of communications they

23   were, and I think what defendants are saying is one of the

24   parties to that alleged communication is saying this

25   communication never happened.  And then the other party to the

1    communication isn't clearly saying they happened or they didn't

2    happen.

3            MR. LOCKINGER:  It's slightly different than that,

4    your Honor.  The issue, as relates to the written

5    communications is, there are no records of the written

6    communications.  And so we raised the issue about the written

7    communications being disputed back in October, and we said --

8    we talked to -- after we finally found out who this purported

9    confidential witness was, we talked to her, and she told us, I

10   never talked to them.  So there was specific dates identified.

11   And we did full forensics on the phone, and we did not identify

12   any record of communications with Mr. Gottlob on those dates.

13           We presented that to SOCi's counsel and explained, we

14   don't believe there is a factual foundation for the

15   communications to have ever happened.  So they said we need to

16   investigate this.

17           So they investigated it, essentially until December 9,

18   which is when we received their report in which they confirmed

19   that there were no records of those written communications.

20   They provided further detail about how they alleged the

21   communications had happened, which presumably came from Mr.

22   Gottlob, and the communications they allege happened via an

23   application called WhatsApp, and they allege that the first

24   communication occurred on or about April 16, 17, or 18, and

25   then the last communication occurred on June 5.

1          The rationale that they provided for why we don't see

2    any of these communications on Ms. Wong's phone is because they

3    have said Ms. Wong deleted them, and their basis for that is

4    that certain calls were not there, which are entirely unrelated

5    to these communications with Mr. Gottlob.

6          The reality of those is that the forensic record shows

7    that we have a database going back to May 25 that would show

8    any activity on the application or on any application on

9    Ms. Wong's phone, and that would show, let's say, like WhatsApp

10   activity on June 5, even if it was deleted off of the WhatsApp

11   application willfully.

12         MR. SKIBELL:  That's not true.  That's factually not

13   true.

14         THE COURT:  Stop it.

15         MR. LOCKINGER:  This is forensic information.

16         THE COURT:  Stop.  Right now.

17         Let your adversary finish.  He sat patiently.  I sat

18   patiently.  I didn't interrupt you.  I let you go on for a long

19   time.

20         My question for you, Mr. Skibell, when I get back to

21   you, so you have time to think about it, is that you are going

22   to tell me what case law does not allow me to order Mr. Gottlob

23   to be deposed.

24         Mr. Lockinger, I know we talked about the forensic

25   issues.  I really want to just kind of step back a little bit.

1    I know you were trying to clarify what I was working through.

2          To summarize, your forensic investigation leads you to

3    believe, so we don't draw any contemporaneous objections right

4    now, leads you to believe that there was no communication --

5    that the communication didn't happen because your forensic

6    record suggests that it never existed in the first place, and

7    there is no evidence of deletion of anything.

8          MR. LOCKINGER:  We believe that's the simplest

9    explanation.

10          The other explanation is that these communications

11    happened and Mr. Gottlob deleted them days before this

12    litigation was initiated, so the only written records that

13    exist, and these can't be recovered.  There are expert

14    witnesses who said that this is the case, and we don't think

15    there is any dispute about it.  The only written record

16    memorializing what the communication actually contained was

17    deleted essentially on the eve of litigation, which we think is

18    a separate basis for sanctions under Rule 37(e).

19          To provide more context around what was happening at

20    that specific moment in time, SOCi's counsel told us that,

21    within hours of the June 5 communication, the alleged

22    communication on June 5, Mr. Gottlob was speaking with Glenn

23    Agre and had over 10 conversations with Glenn Agre about this

24    written communication, the substance of it, but at no point was

25    a written communication reviewed by Glenn Agre, and at no point

1  was it preserved, and presumably, at some point subsequent to

2  that, Mr. Gottlob deleted it.

3         THE COURT:  Mr. Skibell, you have that case for me?

4         MR. SKIBELL:  Your Honor, sure.  We have four cases

5  that we would provide to your Honor.  They are on the first

6  page of the letter.

7         The first one is *Laba v. JBO Worldwide Supply Party*

8  *Ltd.*

9         THE COURT:  The parenthetical is a conclusion that

10 talks about generally what happens.  My specific question to

11 you was, in a case like this, where there is a factual question

12 about whether certain communications happened or didn't happen,

13 why can I not order depositions of the particular people who

14 are alleged to have been part of those conversations?

15        MR. SKIBELL:  Your Honor, what the cases state, your

16 Honor, is that a Rule 11 motion is premature before the close

17 of fact discovery, and they give the explanation as to why,

18 which is that there needs to be a complete record.

19        So we are not saying that deposition of Mr. Gottlob

20 couldn't go forward, but all discovery should go forward so

21 that we -- when there is a complete record, then the Rule 11

22 motion can be decided.  You shouldn't decide a Rule 11

23 motion -- it's what the case law says over and over again --

24 until after the close of fact discovery.  That's the case law

25 we provide, your Honor.

1      THE COURT:  Why can't we start building the record by

2  getting the depositions of Mr. Gottlob and Ms. Wong if people

3  want it?

4      MR. SKIBELL:  Part of the issue with that, your Honor,

5  is that without having all the documentary evidence, it's very

6  difficult to cross-examine a witness, and that would probably

7  require us to depose that individual multiple times after we

8  got additional documents.  Normally, courts frown on that type

9  of --

10      THE COURT:  Normally, courts frown on that.  Do you

11  see a frown on my face right now?  No.

12      Here is what we are going to do.  You are going to

13  have a limited deposition without prejudice to later

14  depositions, if necessary and if the case proceeds, but the

15  limited deposition is going to be on the subject matter of

16  whether these communications happened.

17      MR. SKIBELL:  Understood, your Honor.

18      THE COURT:  Anything else to add to that, Mr.

19  Lockinger?

20      MR. LOCKINGER:  No, your Honor.

21      THE COURT:  Do you want a deposition of Ms. Wong also?

22      MR. SKIBELL:  Yes, your Honor.  But we want -- I

23  believe we should be entitled to the other evidence that we

24  have asked, which would make it possible for us to do a proper

25  deposition of Ms. Wong rather than just ask, did you do this,

1    and have her answer whatever her answer.

2         Normally, you have evidence that you can use to

3    cross-examine and test a witness' recollection, and you're

4    cutting us off from that by staying discovery, so I don't think

5    it's going to be a particularly useful deposition.

6         We have asked for what I believe is limited discovery

7    to allow us to address a serious motion.  We have tried to give

8    your Honor the case law that supports why that discovery is

9    necessary.  We tried to give you the real contemporaneous

10   evidence that shows that Mr. Gottlob is telling the truth.  We

11   have offered to provide further information, including our own

12   internal lawyer witness memorandum, if they would do the same.

13        We are attempting to engage what we believe is the

14   proper way, with serious allegations, which is, do this the

15   right way, which is on a complete record, not just do it --

16   pull this person in and say, did you do this?  I just don't

17   think that's the way these types of motions should be handled

18   under the case law.

19        THE COURT:  I asked you to apply facts to the law.  I

20   understand that the case law generally says that we don't get

21   into spoliation motions, we don't get into Rule 11 motions

22   until we have a fuller view of what's going on.

23        However, this is a discrete issue that has been

24   brought to my attention.  I am deeply concerned, but I am not

25   ruling one way or the other.

1          But I am allowed to stage discovery, and I need to

2     hear a reason that binds me as to why a limited deposition of

3     Mr. Gottlob and/or a limited deposition of Ms. Wong on these

4     particular issues, this particular section of the complaint

5     cannot go forward.

6          I hear what you are saying about having a complete

7     record and having documents on which to cross-examine.  From

8     what I understand, what's happened in the last four to six

9     weeks in the exchange of information, the provision of the

10    forensic analysis, the conversations that you've had, some of

11    the documents that have been exchanged already may be

12    sufficient for you to effectively cross-examine and frame your

13    deposition and your defense of the depositions, especially when

14    I am saying it's without prejudice to, if this case proceeds,

15    further deposition of these particular individuals on other

16    parts of the case.

17         Go ahead, Mr. Skibell.

18         MR. SKIBELL:  Your Honor, I would say, I don't think

19    that's true.  I don't know -- I have no communications between

20    Ms. Wong around the times of these communications took place.

21    I have no communications between any of the other persons that

22    are alleged to have participated in these discussions.  I don't

23    have witness interviews.  I don't have all sorts of evidence

24    that would go -- either tend to corroborate or not corroborate

25    Mr. Gottlob's sworn testimony under penalty of perjury, where

1    he has no reason to make this up.

2         What we have sought was, we said, look, we would

3    like -- this is a right around the month period of time.  Let's

4    do the discovery over a month period of time on the documents,

5    and then let's do the depositions.  We are fine with that.  But

6    to go in cold and to go in front of Ms. Wong with just her

7    declaration and her calendar for one week, that's not, to me,

8    sufficient.  We don't have a full forensic record, by any

9    means, here.

10        Can I say one other thing?  One thing on the forensic

11   record.  We already know that Ms. Wong deleted certain items.

12   That was found by their forensic individual.  And we know that

13   they did use WhatsApp to communicate, because there are

14   WhatsApp communications that took place.

15        The other thing that the forensic evidence has told us

16   is, you can't rule anything out because when Apple changed

17   their technology, basically, it's impossible to re-create

18   information if either side deleted it, unless you have tools

19   only available to law enforcement.

20        So the absence of information is not necessarily

21   dispositive, which is one of the reasons why we are seeking a

22   fuller record and it's not as simple as, just do the forensics

23   and then you are done.

24        THE COURT:  Has forensics been done on Mr. Gottlob's

25   phones or email or anything like that?

 1             MR. SKIBELL:  Absolutely, your Honor.  That's part of

 2   how we provided all those text messages to your Honor in

 3   connection with his contemporaneous email texts with others.

 4             MR. LOCKINGER:  Your Honor, it may be helpful for a

 5   full record on this discrete issue to have the forensic records

 6   in full produced by both sides and to also have the forensic

 7   expert potentially available for a deposition as well, to the

 8   extent that we need to test the sufficiency of what claims are

 9   being made by the specific forensic examiners.  I think that

10   that would provide as much as we can get to 100 percent

11   certainty.

12             I think one of the issues that I raised that

13   Mr. Skibell objected to is one that I think is key because it

14   does, I think, show -- essentially, I think, we can prove a

15   negative here, as relates to Ms. Wong's phone.  And I think if

16   we have a full record and everyone is logged in, then perhaps

17   that results in us not needing to address these issues through

18   motion practice.

19             MR. SKIBELL:  One thing in connection with that is, we

20   would like the parties to exchange devices and the backup

21   information related to that.  We are 100 percent willing to do

22   that.  To date, I have not heard that they are willing to do

23   the same.  Our expert would like to look at her device.  And

24   stuff is backed up to the cloud, to be clear, so it's not just

25   on the device itself.  But that is something that our expert

 1    has said would be incredibly helpful in addressing these

 2    issues.  There may be other devices, like computers, because

 3    that's part of how the phone backs up, I'm told, but, at a

 4    minimum, we would like to be able to image the phone and for

 5    the expert to examine it.

 6         THE COURT:  You may not need to image the phone

 7    because, presumably, the phone has already been imaged, right?

 8    Why can't you use that image?

 9         MR. SKIBELL:  Our expert has certain tools that he

10    uses, so he would like the ability to do that himself and says

11    that's important.  We are willing to do the same.  We are

12    willing to share Mr. Gottlob's phone.

13         THE COURT:  I am concerned because if you take an

14    image of a phone today, it's different from the image that was

15    used to do the forensics and it pulls in and it images a lot of

16    unnecessary, private, confidential, irrelevant, and possibly

17    privileged information.  So I don't think that's the way I am

18    going to go, at least in the first instance, unless defense

19    counsel --

20         MR. SKIBELL:  We are willing to share.  We can do it

21    with a protective order in place.  We can do it with certain

22    parameters in place.  But if we are just going to have this in

23    forensics, I think there should be an open exchange of

24    information on forensics.

25         MR. LOCKINGER:  Frankly, your Honor, I don't see

1    any -- this is the first we are hearing of this request.  I

2    also don't see any utility to it.  If their forensic expert can

3    explain what tools that forensic expert has that he doesn't

4    believe that our forensic expert has, we can confirm whether we

5    have those tools, and we can use those tools, if necessary.

6          But to give the device, I don't think is either

7    merited or necessary and would be an extreme invasion of Ms.

8    Wong's privacy, to the extent that all of her records would be

9    handed over to some unrelated third party with no scope or

10   review or anything.

11         I think we are getting pretty far afield, though, in

12   the discussion here.

13         What we had proposed, I think, in the first instance,

14   is to say, let's get the full forensic records from both sides.

15   We have yet to receive the full forensic records from Mr.

16   Gottlob.  While he's now offering to give us his device, he

17   still hasn't given us the full forensic record.  We would

18   request the full forensic record along with a sworn statement,

19   which still hasn't come, from the examiner, and to give us all

20   the details in sworn testimony.  And then if we think that we

21   need to test that in deposition, which I think may be helpful

22   and appropriate, we can do so.

23         If further discovery is merited after that, I think at

24   that point we can examine it, but at this point it seems we are

25   jumping three steps ahead when we haven't done the first two

1    steps.

2            THE COURT:  Defense counsel, do you feel that you have

3    enough to make your Rule 11 and Rule 37(e) motions now?

4            MR. LOCKINGER:  We do, your Honor.

5            THE COURT:  I am going to ask you to hold off on that

6    for a little while.

7            MR. SKIBELL:  Your Honor, I would like to make one

8    more point in connection with all this.

9            THE COURT:  Um-hum.

10           MR. SKIBELL:  It also goes back to the interview memos

11   that we have asked for.

12           THE COURT:  No.  You're not getting them.  You're not

13   getting them now.

14           MR. SKIBELL:  I'd like to just --

15           THE COURT:  Unless you want to exchange any memos that

16   your firm has between Mr. Gottlob and Mr. Agre.

17           MR. SKIBELL:  We have already offered that, if they

18   would do the same.  We are literally putting everything out

19   there.  We don't think these are privileged.  We think they are

20   facts.  We are willing to do that.  They are not willing to do

21   the same.

22           MR. LOCKINGER:  Your Honor, on this specific

23   discovery, it's not clear to us what relevance it has in the

24   discrete issue that's being raised.

25           What Mr. Skibell is talking about, in terms of the

1    interview memos, are interview memos with the former SOCi

2    employees, right.  These are the individuals who came over from

3    SOCi that now work at Yest.  So this is not related to the

4    issue of whether there was a communication or not.

5            What he is essentially saying is, I want to confirm

6    whether the allegations are true or not by reviewing

7    contemporaneous communications between counsel and these

8    individuals that was only generated by the fact that they sent

9    a legal litigation notice.  They told us that they are going to

10   potentially sue, which generated those conversations.

11           This is not just attorney work product.  This is

12   attorney-client privilege.  If they needed to actually talk to

13   these people for some purpose fact related, they could depose

14   them, and they are still available.  They are available for

15   deposition, if that actually is necessary, for purposes of

16   resolving anything related to the Rule 11 or Rule 37(e) motion.

17   We don't think that it is.  It's a secondary question as to

18   whether the allegations are true or not.  You don't get there

19   unless you can show that the communications themselves actually

20   happened, and that's what we are raising the issue with.

21           MR. SKIBELL:  Your Honor, can I briefly respond?

22           THE COURT:  No.

23           Here is what I am going to direct.  Exchange full

24   forensic records, both directions.

25           When can you do that?

```
 1              MR. LOCKINGER:  We can do it this week.

 2              MR. SKIBELL:  I have to speak to our expert to see

 3    when he can do it.

 4              THE COURT:  The records are the records, right?  He is

 5    not creating more records.  There is no more work he has to do?

 6              MR. SKIBELL:  It's not like a record, like you hit a

 7    button and something pops out.  If they want a report, it has

 8    to show everything that he did and his conclusions.  Neither

 9    side -- they produced like a six-page report.  That's not

10    everything -- that's not a forensic record that somehow exists

11    independently.  I have to speak to him about what format it

12    would be in.  I need to speak with Joe about what information

13    we think we might still need from their forensic expert.  Like,

14    we will do it expeditiously, but I can't give you a date

15    without speaking to the gentleman --

16              THE COURT:  I can order a date.  December 20, close of

17    business, that's Friday.  You have got a little more than 48

18    hours.  If you have a problem with that date, make an

19    application, and you explain to me why you can't do it by

20    December 20.  OK.

21              Full exchange December 20, close of business, without

22    prejudice to extension, but requests must be made before then,

23    and it must propose a date by which the records actually can be

24    exchanged.

25              Witnesses Wong and Gottlob will be produced for a
```

 1  limited-scope deposition in January 2025.  These depositions

 2  will be without prejudice to further depositions on other

 3  issues.  The scope is limited to the issues raised by

 4  defendants' proposed Rule 11 and Rule 37(e) motions.  No other

 5  discovery at this time.

 6         I want a joint status letter on January 17 on where

 7  you are in these various steps.  If you are seeking additional

 8  discovery on these issues, you will need to do it by letter

 9  brief and tie it closely to the reasons you need it before the

10  Wong and Gottlob depositions.

11         You can tell, from the tenor of this conference, that

12  I'm not inclined at this time to order any other written or

13  electronic discovery.  You are not to exchange devices.  You

14  may, if you both agree to change images of the devices that

15  were used to -- for each side to conduct their own forensic

16  inquiry, but let's keep it at this because the real issue here

17  is, I think, whether these particular communications occurred

18  or not.

19         I understand that these are serious charges.  They are

20  serious accusations.  The reverse is also serious because the

21  flip side of this is, is that if plaintiff is right, then they

22  are essentially accusing Ms. Wong of lying to counsel, of

23  destroying documents or deleting documents on her phones as

24  well.

25         I think this is something that warrants a little bit

1   of front-loading effort to figure out if there is a way we can

2   get to some resolution on this issue and potentially on the

3   case, and we will take it from there.

4          MR. SKIBELL:  Your Honor, can I ask a clarifying

5   question?

6          THE COURT:  Sure.

7          MR. SKIBELL:  Because we think it's important that we

8   be able to depose Ms. Wong with real evidence.  We would like

9   the communications she had with others around that period of

10  time.  For example, we'd like communications that would go to

11  whether this meeting that is being described took place,

12  because those things would be useful to either show that she is

13  telling the truth or not telling the truth, and we don't think

14  we should have to depose someone with her hand tied behind her

15  back, given these kinds of allegations.

16          So if she, for example, is texting other people around

17  that period of time, if she is writing emails around this other

18  period of time, if other people are emailing about this meeting

19  that we believe took place, all those things would help

20  corroborate Mr. Gottlob's version of events, and we believe he

21  is entitled to that, frankly.  I can put it in a letter brief,

22  but that is what we think would be appropriate in these

23  circumstances, rather than make us go in with no docs and do a

24  deposition.

25          MR. LOCKINGER:  Your Honor, this just gets into the

1   secondary question, which is whether the allegations are true

2   or not, which presupposes that the communication happened.  So

3   it essentially says, let's just skip that question and

4   determine whether the allegations themselves are true.  She

5   swore that they are not true.  We provided some limited

6   discovery on this point.

7           But, ultimately, what SOCi's counsel has repeatedly

8   proposed is broader discovery, broader inquest, broader

9   searches to try to find something that might match to these

10  allegations, that the only source for these allegations is this

11  alleged communication, and the written communication does not

12  exist.  Both parties essentially agree on that point.

13          The reason why it doesn't exist is disputed.  We

14  believe it doesn't exist because it never happened.  At a

15  minimum, it doesn't exist because other parties had perhaps

16  deleted it.  Those are the questions that need to be resolved

17  at this point.

18          If and when those questions are resolved and it

19  doesn't result in us moving forward with our Rule 11 and our

20  Rule 37(e) motion, the other questions that Mr. Skibell is

21  bringing up would be addressed in general discovery.

22          MS. BROWN:  Your Honor, may I briefly be heard on

23  behalf of Mr. Gottlob?

24          THE COURT:  Sure.

25          MS. BROWN:  Thank you, your Honor.

```
 1              My concern is, obviously, these are very serious
 2   allegations against my client.  And my concern is that with the
 3   order of just these two depositions, it's going to be no more
 4   than a he said, she said, and we know what both parties are
 5   going to say.  They are going to say what they both have said
 6   in their declarations.
 7              Without some sort of other discovery, I'm concerned
 8   that it's simply going to be a he said, she said and with no
 9   other documents, like Mr. Skibell said, around surrounding the
10   meeting, at the time of the meeting.
11              Because it's not just -- to say that it's just a
12   question of whether the communication took place and whether
13   there is evidence on the phones of this particular
14   communication I think is looking at the issue too narrowly,
15   because there is other evidence that could corroborate the fact
16   that the communication occurred that goes beyond what may or
17   may not be on these individuals' phones, including what the
18   other former SOCi employees, Stuart Greer and Keith Hadelman,
19   what communications were they having around the time.  There is
20   more to be -- there is more to be done than just ask these two
21   witnesses the question of whether the communication happened
22   and look at what their phones may or may not say on the issue.
23              THE COURT:  What's the standard of proof, as it were,
24   for a Rule 11 motion?  If it comes out to a he said, she said,
25   I don't think it's the province of the Court, necessarily, to
```

```
1    judge credibility, right?  If it turns out to be he said, she
2    said, you guys lose on the Rule 11, doesn't it?
3              MR. LOCKINGER:  That's right, your Honor.
4              We believe that we can show there is a lack of
5    foundation in fact for the allegations, and that's we think we
6    have sufficient evidence for right now.
7              We understand the caution that the Court is issuing
8    here to say, let's do some additional discovery, let's look at
9    the full records, and we think that that should be sufficient,
10   but we don't believe we need additional records.  We think we
11   could make the motion today.
12             THE COURT:  I am going to ask you not to make the
13   motion today, if you are going to have this discovery, and then
14   we will see -- if you persist in making the motion, whether
15   it's under Rule 11 or Rule 37, we will deal with it then, and
16   we will deal with it procedurally.
17             Mr. Gottlob and SOCi will obviously have an
18   opportunity to respond and be heard.  They are the ones who
19   have quite high burdens of proof on both Rule 11 and Rule 37.
20             I'm not generally a fan of having discovery about
21   discovery or having discovery about an investigation and
22   front-loading some of these issues in a case.  In the past,
23   typically, I have considered it later in the case, but the fact
24   that you weren't able to resolve the Rule 11 issue and that it
25   now implicates potentially Rule 37 has me concerned enough that
```

1    I want to see what comes out of this.  When I say I want to see

2    what comes out of this, it may be that a motion isn't filed,

3    ultimately.  It may be that something more measured -- more

4    measured steps were taken, but let's allow this process to

5    proceed a little bit more in a little bit limited fashion, and

6    then we will see what happens at that point.

7            This is, again, without prejudice to further discovery

8    if something happens either at the depositions or something is

9    said at the depositions, or if something -- you see things in

10   each other's exchange of the full forensic records that leads

11   you to take a more cautious approach on either side.  I'm not

12   suggesting that one side is right or wrong here.  But once you

13   get a little bit more, let's see if that changes your views

14   about this.

15           I take very seriously these types of motions, and I

16   will take very seriously Rule 37(a)(5) also.

17           So if it turns out that there is a motion brought

18   under Rule 37, and I'm able to make a decision on it, or make a

19   finding or make a ruling on it, I will consider imposing costs,

20   so there will be some cost shifting.  If you prevail, you are

21   going to be able to get some costs.  Vice-versa.  Keep that in

22   mind.  Keep that in the background while you are working

23   through this limited issue.

24           I honestly had thought that giving you the time to

25   convene and share information might have led to a position that

```
 1   you were able to avoid the motion completely, whether it was

 2   because there was going to be an amended complaint filed or

 3   because there was something else that was going to happen.

 4   Again, not opining one way or the other what that information

 5   would have led you all to decide, but I did not think we were

 6   going to be here.

 7          So what you are going to get next is, you are going to

 8   get some depositions.  You are going to get some limited

 9   discovery on the foundation, I guess, for some of the

10   allegations in the complaint.

11          Anything else we need to do at this time?

12          MR. SKIBELL:  No, your Honor.

13          THE COURT:  This limited discovery should be completed

14   by January 31.  Joint status letter on January 17 on where you

15   are with everything.  If you intend to write another status

16   letter after you have completed the steps that you are going to

17   complete, you can certainly do that, but I just want to get a

18   sense, on January 17, that you are not even farther apart than

19   you were before.  OK?

20          MR. LOCKINGER:  Understood, your Honor.

21          MR. SKIBELL:  Thank you, your Honor.

22          THE COURT:  I am going to request the parties order a

23   copy of the transcript, split the cost 50/50.

24          Thank you very much.  We are adjourned.

25          (Adjourned)
```